## BORLAND v. MAYO.

1. As the plaintiff in execution, if succesful upon the trial of the right of property, is entitled to a return of the specific thing, which was delivered to the claimant, or its assessed value, it is allowable for him to offer evidence to the jury, to show what was its value at the time of the trial.

2. The defendant in execution made a sale and conveyance of his entire estate to the claimant, and the former made certain statements to his creditor to induce him to accept the claimant for his debtor: *Held*, that as these statements were no part of the *res gesta*, viz: the sale and conveyance, the

Borland v. Mayo.

creditor to whom they were made could not be allowed to narrate them as evidence.

3. On the trial of the right of property, the consideration of the cause of action on which the judgment was recovered, is not a matter in issue, yet if evidence to this point has been admitted, at the instance of the plaintiff in execution, a judgment in his favor will not, for that reason, be reversed; unless it appear that the claimant was prejudiced by its admission.

4. With the view of showing that a sale of property on long credits was fraudulent, by reason of the inadequacy of the price agreed to be paid, it is permissible to prove, that the price stipulated is less than the property in question would have commanded, on the time given.

5. The declarations made by a vendor, previous to the sale, are admissible to contradict his testimony given on the trial of a cause in which the *bona fides* of the sale is drawn in question.

6. The declarations of a vendor are admissible against his vendee, where the purpose of both was to consummate a fraud by the sale.

7. Where the vendor of a plantation and slaves, in giving testimony, with a view to support the sale, stated that he acted as the vendee's overseer, it was allowable for the adverse party to inquire of another witness, whether he ever knew the vendor to act as an overseer of the vendee.

8. Evidence of declarations made by a defendant in execution, which are not part of the *res gestæ*, are not admissible upon the trial of the right of property against the claimant, who deduces a title from the defendant—the defendant in execution is himself a competent witness.

9. With the view of showing the transaction to be fraudulent, it is competent to show that the vendee, who purchases from his son-in-law all his estate (which is a large one,) even on time, was himself greatly indebted at the time of the purchase.

10. After the plaintiff has introduced his evidence, the defendant his, and the plaintiff rejoined, it is then a matter of discretion whether the Court will allow the defendant to adduce further testimony.

11. Where the vendor of property remains in possession, his declarations in respect to the same, are evidence against the vendee.

12. If a debtor in failing circumstances makes a transfer of his property, which is intended, both by the vendor and vendee to prevent what they consider a sacrifice by sale under execution, and thus enable the vendor, afterwards to give a preference to his own proper creditors over those to whom he was liable as a surety; such a transaction is a fraud upon the creditors who are hindered or delayed in the collection of their demands.

13. Where an absolute sale of personal property is made, there must be an actual *bona fide* delivery of the same to the vendee, in order to give a title as against the creditors of the vendor, or some *special reason or excuse shown*

14

*for the retention of the possession by the latter;* and the fact, that the vendor was the son-in-law of the vendee, is not a legal excuse.

14. Where there is a fraudulent sale, the parties may rescind it, and make another contract in good faith, before liens attach upon the property as the vendor's; but where a sale is void *ab initio* for fraud inferrable from inadequacy of consideration, or other cause, it cannot acquire validity against the creditors of the vendor, although the vendee may pay a sum beyond the amount of the purchase money stipulated.

15. It cannot be intended that the vendor was aware of the vendee's insolvency, merely because he purchased all his estate on long credits.

16. If a father-in-law purchase from his son-in-law, who is in failing circumstances, all his estate, consisting of lands, slaves, furniture, &c., the transaction will be looked on with suspicion, and if there are other circumstances making its fairness questionable, then, altogether, they should be considered, by the jury, as adverse to the vendee, upon an issue of fraud, *vel non.*

17. Inadequacy of price, upon the sale of property, is a badge of fraud, where the vendor was greatly indebted; though in itself it may not be sufficient to avoid the sale, unless the disparity between the true value and the price paid, or agreed to be paid, was so great as to strike the understanding with the conviction that the transaction was not *bona fide.*

18. If *mala fides* is not attributable to the vendee, but he has acted with fairness, his purchase cannot be pronounced void, at the instance of the vendor's creditors, merely because its *tendency* was to defeat or delay them.

Writ of Error to the Circuit Court of Lowndes.

THE defendant in error having obtained a judgment against John H. Walker, caused a *fieri facias* to be issued thereon, which was levied by the sheriff of Lowndes on a negro man named Joshua, as the property of the defendant in execution, and the plaintiff interposed a claim, and gave bond with security, as required by the statute, to try the right. As issue was thereupon made up, and submitted to a jury, who found the slave in question subject to the execution, and assessed his value at seven hundred and fifty dollars, and judgment was rendered accordingly.

On the trial, the claimant excepted to the ruling of the Court. It is shown by the bill of exceptions, that the suit in which the plaintiff's judgment was recovered, was commenced in March, 1840; the execution was issued and levied in November, 1841. In the examination of the evidence, the following questions were

Borland v. Mayo.

raised—all of which were duly reserved, viz. 1. The plaintiff was admitted, notwithstanding an objection by the claimant, to prove the value of the slave in controversy, at the time of the trial. 2. A creditor of Walker testified, that after the sale to Borland, Walker so arranged it as to induce the creditor to accept Borland as his debtor; whereupon the claimant asked the witness to state what Walker said to him, while he was endeavoring to induce him, (witness,) to accept the claimant's note for his debt; but the plaintiff objecting, the witness was not permitted to answer. 3. The plaintiff was allowed to prove the consideration of the note on which his judgment was recovered, although the claimant objected that such evidence was irrelevant. 4. So the plaintiff was permitted to inquire of a witness what difference was usually made between sales, for cash, and on time, for the purpose of showing that the purchase made by the claimant of the defendant, was for a stipulated sum, below the value of the property, considering the credit allowed. 5. The plaintiff was permitted to prove, by a witness, what the defendant in execution said of his intention to sell, for what purpose, &c., before he made the sale, on which the claimant relies, notwithstanding the claimant objected to the evidence, except so far as it went to contradict the defendant; but the objection was overruled, the Court remarking, that such evidence was only admissible to show the intention of Walker in selling, and to contradict him, but not to affect Borland, unless he was connected with his vendor in consummating an unlawful purpose. 6. The plaintiff was also allowed to show, by a witness, that the latter never knew the defendant in execution to act as the overseer of the claimant; this evidence was adduced to contradict Walker, who stated that he was Borland's overseer in 1841, and to prove that the property which the latter claimed under a purchase from the former, had never been delivered to the purchaser. 7. A witness adduced by the plaintiff, was permitted to testify, that he was employed by Walker, professedly as the agent of Borland, in the latter part of 1840, and the beginning of 1841, to act as the overseer of the plantation and slaves, to which the latter asserts a title, under a contract with Walker; that Walker let him have some groceries, and one of the farm horses when he left the plantation, with the price of all which he credited Borland's account. Claimant offered to show what Walker subsequently said about the horse, but

this, on objection, by the plaintiff, was rejected as inadmissible.
8. The plaintiff was allowed to prove, that Borland was greatly
indebted, in September, 1840, notwithstanding it was shown, that
he was a man of wealth, and had property of much greater value
than all his debts.   9. After the plaintiff had closed his testimony,
in rejoinder to the claimant, the latter offered to prove what
Walker said about the groceries and horse, he had furnished to
Graham, after the latter had received them, but this evidence was
rejected.   10, It was shown by the plaintiff, that Walker remain-
ed in possession of the homestead, &c., which was embraced in
the sale to Borland, and that the plantation on which the slaves
labored was adjoining the land on which Walker continued to re-
side ; the plaintiff was then permitted to give evidence of Walk-
er's declarations, notwithstanding the claimant objected.

It was proved that the defendant in execution was the son-in-
law of the claimant, that they both lived in the same neighbor-
hood ; that the former was greatly embarrassed with debt, in
September, 1840, (when he sold *all his property* to the claimant,)
perhaps a hundred per cent. beyond the value of his estate; that
the sale was made on a long credit, the last payment not falling
due, until the expiration of twelve years thereafter ; that the claim-
ant made different statements, as to the price he was to pay for
the property ; that according to the largest sum stated by him,
the slaves might be so employed on the plantation as to yield a
profit large enough to pay the purchase money in eight or ten
years ; that there was no ostensible change of the possession of the
property sold from Walker to the claimant, &c.

The plaintiff prayed the Court to charge the jury as follows;
1. That if the vendor was a debtor in failing circumstances, in
September, 1840, and had creditors including the plaintiff in exe-
cution, not provided for by the sale to the claimant, who were
hindered in the collection of their demands, and that the tranfer
to the claimant was intended by the vendor and vendee to pre-
vent what they considered a *sacrifice* of the property, by sale
under execution, and thereby enable the vendor, afterwards, to
give a preference to his own *proper* creditors, over those to
whom he was liable as a surety, then the plaintiff was entitled to
a verdict.

2. If there was no actual and *bona fide* change of possession,
consequent upon the sale from the defendant to the claimant, and

*no special reason or excuse* was shown, for the retention of possession by the vendor, other than the relationship between himself and the vendee, and the use the family of the latter had for the property, then the plaintiff was entitled to a verdict.

3. If the sale by the defendant in execution, to the claimant, was fraudulent and void, as against creditors of the former, for inadequacy of the consideration, on account of the long credit given, or other cause, then it could not be made valid as against the creditors, by the payment of the purchase money before it was due, or by increasing the amount stipulated.

4. If it was the understanding and intention of the parties, that so much of the purchase money as was not appropriated by the deed, should be paid by Borland to such creditors *only*, of his vendor, as the latter should subsequently direct, and who were not provided for ; and it was intended by such means to hinder and delay any of the creditors of the vendor, then the plaintiff was entitled to a verdict.

5. If the deed embraced *all the property* of the defendant in execution, then the jury were authorized to infer from that fact, in connection with the disclosures made upon the face of the deed, that the claimant was cognizant of the insolvency of the former, at the time of the sale.

6. If the defendant in execution was in failing circumstances at the time of the sale, and the claimant was his father-in-law, then, this relationship was a just ground of suspicion, and if other suspicious circumstances were shown, it was to be regarded as a circumstance tending to establish fraud.

7. If, considering the long credit given for the purchase money, by the defendant in execution, to the claimant, or other cause, the jury should believe the price agreed to be paid for the property to be inadequate, and the vendor was embarrassed at the time, then, such inadequacy was a mark of fraud.

8. If the object of the defendant in execution and the claimant was to put the property out of the reach of the creditors of the former, in order to obtain time to pay them, or to compromise their demands, the sale was fraudulent and void ; and this although the creditors may have been the gainers by the sale.

9. Although the claimant may not have intended any fraud, or contemplated a dishonest or fraudulent purpose, yet if the object or tendency of his purchase, was to place the property beyond

the reach of Walker's creditors, and thus hinder and delay them, then the transaction between claimant and defendant in execution was void by construction of law.

10. Although the claimant may have paid more than the property was worth, yet if the object and effect of the sale, was to hinder and delay the creditors of the defendant in execution, then it was fraudulent, and the jury should find for the plaintiff in execution. Which several instructions were given accordingly.

T. WILLIAMS, for plaintiff in error.

R. SAFFOLD for the defendant in error, insisted, that the record discovered no error for which the judgment was reversible. The declarations of a *particeps fraudis* before or after the act committed, are evidence against those associated with him, and the proof of a combination by one witness of a vendor, who fraudulently co-operates with his vendee, being in possession, is evidence against the latter. [2 Phil. Ev. 177-8, C. & H.'s notes; id. 452-3, 601-2, 772-3-4-5; 3 Car. & P. Rep. 94-9; 6 Rand. 285; 7 Cow. Rep. 301.]

What was said by Walker about the groceries and horse, at a time subsequent to that when they were delivered to Graham, was properly excluded. [2 Phil. Ev. 225; 13 Sergt. & R. Rep. 85.]

To sustain the several charges prayed of, and given by the Court, he cited, 2 J. J. Marsh. Rep. 233; 8 Dana's Rep. 263; 2 Con. Ct. S. Caro. Rep. 125-6; 4 Day's Rep. 146, 150-2-6; 9 Johns. Rep. 243; 2 Peter's Rep. 107; 2 Ala. Rep. 313-8; 3 Stewt. Rep. 243-5; 2 Stewt. Rep. 50; id. 336; 5 Ala. Rep. 531; id. 770; 13 Peters' Rep. 101; 12 Sergt. & R. 198, 201-2; 16 Wend. Rep. 523; 17 Wend. Rep. 53; 7 Paige's Rep. 163-5-6; 20 Wend. Rep. 25, 507, 524, 542; 5 Ala. Rep. 324; 9 Johns. Rep. 337; 3 Johns. Ch. Rep. 481; 7 Cow. Rep. 732; 5 Sergt. & R. Rep. 275; 2 Kent's Com. 412; 14 Johns. Rep. 458; 4 Johns. Rep. 536, 592-3-7; 20 Johns. Rep. 442; 1 Hopk. Rep. 373; 2 Mason's Rep. 252; 11 Wend. Rep. 189, 200-1-2; 4 Paige's Rep. 23; 9 Porter's Rep. 39, 566, 573; 3 Ala. Rep. 444; 4 Ala. Rep. 374-6-9, 380-1-2; 2 Phil. Ev. 452; 3 C. & P. Rep. 9.

Borland v. Mayo.

COLLIER, C. J.—1. It was clearly competent to permit the plaintiff below to prove the value of the slave, at the time of the trial. The claimant, by the regular interposition of his claim, became the custodian of the property, until the question of the slave's liability to the satisfaction of the *fieri facias*, should be determined. If the decision was favorable to the claimant, then his bond would become inoperative; but if otherwise, the bond remains in full force, as the statute declares " it shall be conditioned for the forthcoming of the property, if the same be found liable to the execution, and for the payment of such costs and damages as shall be recovered," &c. " And if the claimant shall fail to deliver the same, or any part thereof, when required by the sheriff," it shall be the duty of the sheriff to indorse the failure on the bond, and return it to the clerk, &c.; whereupon the bond shall have the force and effect of a judgment, and execution shall issue against the claimant and his surety, for the value of the property not delivered, as assessed by the jury. [Clay's Dig. 211, § 52; 213, §§ 62, 64.] The latter section directs, that when the jury shall find the property subject to the execution, they shall find the value of each article separately, but does not, in so many words, provide, that they shall be governed in their estimate, by the value at the time the trial takes place, yet, we cannot doubt that the plaintiff may offer proof to show, what the property was then worth. This conclusion necessarily results from his right to have the property to satisfy his execution, and if it cannot be had, or the claimant will not return it, then he is entitled to the value assessed. Whether the plaintiff may not elect to prove the value at the time of the levy, if the property has afterwards depreciated, or been entirely destroyed, we need not consider.

2. It was not allowable for the claimant, to prove by a creditor of the defendant in execution, what the latter said to the creditor as an inducement to him to accept the claimant as his debtor, instead of the defendant. Such declarations were no part of the *res gestae*, which the plaintiff was impugning, but related to a transaction subsequent in point of time to the sale to the claimant, and which the plaintiff did not controvert.

3. The consideration of the note on which the plaintiff's judgment was recovered, was not a question in issue, and could not be controverted in a proceeding of this character; the evidence then adduced to this point was unnecessary, and should not have

been admitted by the Court. But we are unable to discover how the claimant could have been prejudiced by its admission, unless it be conceded that the consideration, viz: services as an overseer, were so meritorious as to overreach and invalidate the sale. This has not been pretended. No injury, therefore, resulting from the evidence, its admission furnishes no sufficient ground for the reversal of the judgment.

4. Where the question is, whether a sale of property on long credits, is fraudulent, it is allowable to show the inadequacy of the price, by showing the difference usually made between cash and credit sales, with the view of proving that the amount agreed to be paid, was less than the property would have sold for on the time given. It cannot be objected that the law fixes the rate of interest, and therefore, the true difference in price is, the addition of the interest to the cash value for the term of credit. There certainly should not be a greater difference, yet, if according to the usual mode of dealing, parties are not thus restricted, the vendor may enforce the contract, if he makes a fair sale, where the difference is more than interest, unless it is obnoxious to the law against usury. The evidence upon this point was, then, properly received.

5. The Court did not admit the declarations of Walker, made previous to the sale to the claimant, without qualification, but the jury were informed that they were to consider them so far as they went to contradict the testimony which Walker had given, in his examination; but the claimant could not be affected by them, unless he was connected with his vendor in the consummation of a fraud. As to the first purpose for which they were admitted, their competency cannot be disputed; and as it respects the second, viz: to show that the sale was fraudulent, under the qualification laid down by the Court, we think their admissibility is equally defensible. The declarations of a conspirator are admissible against his fellow. [Phil. Ev. C. & H. 177, and cases cited.] So, where there is proof tending to show fraud, on the part of the purchaser of property, and a community of design with his vendor, it has been held, that in a contest between the former and the creditors of the latter, the declarations of the vendor are admissible against his vendee. [Clayton v. Anthony, 6 Rand. Rep. 285; Reitenbach v. Reitenbach, 1 Rawle's Rep. 362.] And it has been decided, where the vendor is left in possession of property,

and exercises acts of ownership over it after sale, this proves a combination to defraud creditors, and the declarations of the vendor are evidence against his vendee. [Wilbur v. Strickland, 1 Rawle's Rep. 458; Willies v. Farley, 3 Car. & P. Rep. 395; 2 Phil. Ev. C. & H.'s notes, 178, 601-2.]  The testimony recited in the bill of exceptions shows, that the integrity of the transaction between the defendant in execution, and the claimant, was at least questionable, and that there was no ostensible change of possession.  This being the case, the proof of Walker's declarations, comes within the principle upon which the authorities cited rest, and are admissible against his vendee, if competent evidence under the circumstances.   The form of the claimant's objection to the evidence we are considering, indicates, that he did not object to it because it tended to impeach the credit of the defendant in execution, by showing that he had made other statements of the facts to which he testified, without first inquiring of him, whether he had made such statements. [Lewis v. Post & Main, 1 Ala. Rep. N. S. 69; 2 Phil. Ev. C. & H.'s notes, 771 to 775.] But it was expressly admitted, that it was allowable to give evidence of Walker's declarations, so far as they contradicted his testimony; and as to the further object proposed by such proof, what we have said will make it sufficiently clear, that its admission was placed, by the Court, on the true ground.

6. It was competent for the plaintiff to inquire of a witness, whether he ever knew Walker to act as the claimant's overseer, for the purpose of countervailing the testimony of Walker, who had affirmed such to be the fact, and also to show that there had been no delivery of the property in question to the claimant·  True, such evidence may not be entitled to great weight, yet it was pertinent, and entitled to more or less consideration, according to the opportunities which the witness possessed for acquiring knowledge upon the subject.

7. Evidence of what Walker said about the horse he previously allowed an overseer, employed by Borland, to have, at an agreed price, was properly excluded.   If those declarations were admissible, Walker was *prima facie* a competent witness, and could himself have been called on to relate them.   They constituted no part of the *res gestae*, viz: the witness' employment and service as overseer, or purchase of the horse from Walker

15

on the claimant's account, but they were *post factum* statements, and according to all principle were properly excluded.

8. We can discover no objection to the admission of the evidence, to show that the claimant was greatly indebted in September, 1840, when the sale was made to him, of the entire estate of the defendant in execution. Such testimony, it is true, might not establish a fraud, yet, in connection with other facts, the indebtedness of the claimant might exert a controlling influence. No matter what may be the extent of one's property, prudent men, who are indebted, are less disposed to make heavy purchases, even on time; especially if they do not expect, or intend to realize by a re-sale.

9. What we have said about the seventh objection to the testimony, is conclusive upon this point. But it may be said in addition, that if the Court had misapprehended the law, in rejecting the evidence, its decision would furnish no ground for the reversal of the judgment. The plaintiff in execution opened the case, and laid his testimony before the jury. The claimant then introduced his evidence, and the plaintiff rejoined; after the trial had proceeded thus far, it was a matter of discretion with the Court, whether any other evidence should be adduced. It was at this latter stage of the cause, when the testimony we are considering was offered.

10. The view taken of the fifth objection will show, that the evidence of Walker's continued possession of the property which he conveyed to the claimant, was such as to make the declarations of the former evidence against the latter. We do not say that it was sufficient to negative the conculsion, that the possession was changed, but that there was proof on the point, which the jury should have considered, cannot be questioned. The declarations of the vendor were only admissible upon the hypothesis, that he retained the possession, or himself and vendee were co-workers in the purpose to defraud; and the Court perhaps so instructed the jury, if not, it was proper to call the attention of the Court to it, and pray such a charge.

We will now briefly consider the several charges to which the claimant excepted :—

1. This charge affirms, that if a debtor in failing circumstances makes a transfer of his property to a third person, which is intended, both by the vendor and vendee, to prevent what they con-

sidered a sacrifice, by sale under execution, and thus enable the vendor afterwards to give a preference to his own proper credi‑ tors, over those to whom he was liable as a surety, that such transaction is a fraud upon the creditors, who are hindered or delayed in the collection of their demands. There can be no question but an assignment made under such circumstances is in‑ operative, by the second section of the statute of frauds, which expressly declares, that every gift, grant or conveyance of goods or chattels, by writing or otherwise, made and contrived of ma‑ lice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors of their actions, suits, debts, &c. shall be utterly void. [Clay's Dig. 254.] If the vendor had re‑ served to himself, by a stipulation on the face of the deed, the right to direct the appropriation of the money, such stipulation would have been void against judgment creditors, and the legal conclusion must be the same, although the deed is silent upon the subject, if the sale is the result of a fraudulent combination be‑ tween a failing debtor and a third person, to defeat the creditors of the former.

2. The terms of the contract between Walker and the claim‑ ant, contemplated an immediate change of possession, and if there was not *an actual and bona fide delivery of the property to the claimant,* in order to maintain a title against the creditors of the vendor, it devolved upon the claimant to show some *special rea‑ son, or excuse, for the retention of the possession by the vendor.* The fact that the vendor married the vendee's daughter, and the family of the latter required the services of the slaves, &c. fur‑ nished no sufficient excuse, so as to repel the legal inference of fraud. This point is explicitly adjudged in the Planters' and Merchnnts' Bank v. Borland, 5 Ala. Rep. 531, and cases there cited.

3. If the sale to the claimant was void *ab initio,* for fraud, in‑ ferrable from the inadequacy of the consideration, by the length of credit given, or for other cause, it could not acquire validity agianst the vendor's creditors, although the vendee might pay a sum beyond the purchase money stipulated, and even before the expiration of the term of credit agreed. The fraud of the trans‑ action did not prevent the parties from rescinding it, and making another contract, *bona fide,* before liens attached ; and the charge does not deny such to be the law, it merely asserts, that if the sale

was fraudulent against creditors, in its inception, it still continued so, although the vendee shall have made the full payment.

4. What we have said upon the first charge, is equally applicable to this, and shows that the Court, in giving it, did not misstate the law.

5. The mere fact, that the conveyance from Walker to the claimant, transferred all Walker's property, does not of itself warrant the inference that the latter was aware of the insolvency of his vendor. A man may sometimes be induced to sell all his visible estate, preparatory to a removal from the country; and the fact that he provides for the payment of a large amount of debts, by substituting the credit of his vendee for his own, may not proceed from his inability to pay otherwise. He may find it for his interest to sell on time, because a purchaser cannot be obtained, who is prepared to pay the cash, or by giving credit, a better price may be had. Besides, he may know that it is possible for him to relieve himself from debt, by using the paper of his vendee. And the vendor may thus act, though he has a large amount of cash, which he supposes it will be more beneficial for him to use in some other way.

No such inference can be drawn from the fact, that in this case, a large amount of the purchase money, was payable from seven, to twelve years after the sale. The vendor is usually compensated for giving long time, and hence, if he thus sells, it neither proves his solvency, or insolvency. The written transfer only evidences such a contract as we have described, and does not, when taken alone, or in connection with the fact supposed, show that the claimant knew his vendor was insolvent, when he purchased from him.

The fact of the relationship of the vendor and vendee, the contiguity of their residence, and the actual insolvency of the former, perhaps, would have authorised a jury to presume, that the claimant was aware of Walker's situation; the charge does not rest the presumption on these grounds, but alone upon the purchase of all the vendor's property.

In Yates and another v. Carnsew, 3 Car. & P. Rep. 99, the question arose under the statute of 46 George III, ch. 135, whether a party dealing with a trader, knew him to be insolvent. The defendant there had for nearly two years been buying goods of the bankrupt at prices vastly below prime cost, and *Lord Ten-*

*terden* said to the jury, "it is for you, as men of business, to say, whether the defendant could go on dealing with a man in this way, for so long a time, without knowing that he was insolvent. There is no doubt, that for the sake of getting ready money, great sacrifices are often made, in one or two transactions, by solvent men, but the strength of this case, on the part of the plaintiff, is, there were, not merely one or two dealings between these parties, but a continued series of them," in two several years. Here, the vendee's knowledge of the vendor's insolvency was presumed from extensive purchases of goods, repeatedly made, during a long period of time, at prices far below cost; while, in the case at bar, the Court was required to instruct the jury, that if the claimant purchased all the property of the defendant in execution *at one time*, it might be legitimately inferred that he was aware of his vendor's insolvency. Such a conclusion, we have seen, cannot be predicated of the premises.

6. This charge assumes, that if a father-in-law purchases from his son-in-law, who is in failing circumstances, all his property, including lands, slaves, horses, cattle, hogs, household furniture, &c., the relationship of the parties will cause the transaction to be viewed with suspicion, and if other suspicious circumstances were shown, its tendency would be to establish a fraud. The law is not laid down too stringently against the claimant. The connection between the vendor and vendee, the embarrassment of the former, and sale of all his property, certainly should cause the transfer to be looked on with suspicion, and if there were other circumstances making its fairness questionable, then all taken together, should be considered by the jury, as adverse to the vendee, upon an issue of fraud *vel non.*

7. Inadequacy of consideration, where the vendor is greatly indebted, is recognized as a mark of fraud. In this charge the Court says nothing more than so to declare the law. True, it might not be sufficient *per se*, to authorize a sale to be annulled, unless the disparity between the true value of the property, and the price paid, or agreed to be paid, was so great as to strike the understanding at once, with the conviction, that such a sale never could have been made *bona fide.* But it may be a mark of fraud where the difference is not so great, and when other circumstances are associated with it, they may be conclusive.

8. What has been said in respect to the first and fourth charg-

es, is applicable to this.    It merely affirms, that if the facts be such as are supposed, then the conveyance would be fraudulent because intended by both parties, to delay and hinder creditors in the collection of their debts.    That such a conclusion is a necessary sequence, if the facts are affirmatively shown, we think will not be seriously questioned.

9. This charge, we think, cannot be supported.    It assumes, that although the claimant may have been influenced by honesty of purpose, in purchasing the estate of the defendant in execution, yet if the object, *or* tendency of the purchase was to place the property beyond the reach of the vendor's creditors, and thus hinder and delay them, the transaction was void, by construction of law.    Now, every man may sell his property in good faith, if neither creditor nor other person has a lien which is opposed to such a right; and this, although the consequence may be to defeat creditors in the collection of their demands.    If the vendee has meditated no dishonest purpose, but has acted with fairness, his purchase can't be pronounced void, at the instance of the vendor's creditors, merely because its "tendency" was to defeat or delay them.    The claimant cannot be injuriously affected by the fraud of the defendant, unless he participated in it, or can, by legal construction, be connected with it in some offensive manner. If, in speaking of the effect of the sale, the word *object* alone had been used, or object *and* tendency, instead of connecting the two latter by the disjunctive " or," then the instruction would have been proper ; but these terms could not have been employed because it was hypothetically admitted, that no fraud or dishonesty of purpose was attributable to the claimant,    In declaring, that if either the object *or* tendency of the purchase was to defeat the vendor's creditors, then the same was void, it is sufficiently shown, that the Court did not correctly state the law.

10. For the reasons stated in considering the first, fourth and eighth charges, this is unobjectionable.

We have thus considered the numerous points made upon the record in this cause, with as much brevity as we could, in order to make ourselves intelligible.    The great and unnecessary length to which the bill of exceptions is drawn, admonishes us of the propriety of again declaring our disapprobation of a practice, which causes bills of exception to be surcharged by the statement *in extenso* of all the evidence adduced, as well oral as documen-

tary.   Such a practice is productive of benefit to no one—it imposes increased labor upon the counsel; the case, instead of being divested of every thing extraneous is mystified, and a heavy draft is made upon the time of the appellate Court in denuding it, that it may be seen what are the questions intended to be revised.

The points made being severally considered, recapitulation is unnecessary, and we need only add, that the judgment of the Circuit Court is reversed, and the cause remanded.