## WEAVER v. YEATMANS.

1. The declarations of one in possession of personal property, tending to impugn the validity of a deed of trust, which he had previously executed, and under which the claimant, (against whom the testimony is offered,) deduces his title, is inadmissible.

2. The declarations of a vendor are not admissible evidence against his vendee, without first establishing facts, from which an inference may fairly be deduced, that there was a combination between vendor, and vendee, to defraud the creditors of the former.

Error to the Circuit Court of Pickens. Before the Hon. Samuel Chapman.

THIS was a trial of the right of property in a quantity of seed cotton, levied on under an execution in favor of the defendants in error, against one Alanson Brownlee, and to which a claim was interposed by the plaintiff in error.

The plaintiffs in execution having made out a *prima facie* case, rested, when the claimant introduced testimony, con-

ducing to show, that he purchased certain negroes, early in
the year 1847, at a trust sale made under a deed of trust,
which said Brownlee, who was the son-in-law of the claim-
ant, had theretofore executed: that he took possession of the
negroes so purchased, and delivered them on the same, or the
next day, to said Brownlee, in the capacity of overseer for
him, with instructions to him to make a crop with them for
the claimant the ensuing season, on the premises on which
said Brownlee lived, and had lived for some years before,
saying to him at the time, that if he made a good crop, he
would pay him well, otherwise, not so much, and that the
cotton in controversy was part of the crop made by said ne-
groes.   The plaintiffs in execution then offered evidence,
tending to prove, that Brownlee had been in possession of,
and had controlled said negroes, for some eight or nine years
previous to the trust sale, and that there was no apparent
difference in the possession, or management, of said Brown-
lee, of said negroes and of the plantation, after the alledged
purchase by the claimant.   The plaintiffs in execution also
offered a witness to prove, that in the year 1847, after the
purchase by claimant, but while the negroes were in Brown-
lee's possession, said Brownlee made certain declarations,
touching the deed of trust, to the effect that it was fraudu-
lent, and made to hinder and delay his creditors, with the
privity and knowledge of the claimant.   To this the claim-
ant's counsel objected, but the court overruled the objection,
and permitted the evidence to go to the jury.   Other decla-
rations of Brownlee, of the same character, and made during
the same year, were allowed to go to the jury in opposition
to the objection of the claimant.

To the rulings of the court, the claimant excepted, and
now assigns them as error.

BLISS & BALDWIN, and PORTER, for plaintiff in error.

1. The court will intend, that the trust sale was a
public sale—that being the usual mode of selling property
under deeds of trust.   The remaining in possession of the
negroes, or rather, the resumption of the possession of them,
did not raise any presumption of fraud.   Simerson v. Branch

Bank of Mobile, 12 Ala. R. 205, and cases cited; Andrews & Bro. v. Jones et al. 10 ib. 400.

2. That the declarations as to the fraud in the sale were not admissible as parts of the *res gestæ*, nor were they parts of the *res gestæ;* and this whether the sale were public or not; within the language of McBride and wife v. Thompson, 8 Ala. 653.

3. The chief point is, as to whether the declarations of Brownlee were so far parts of the *res gestæ* as to be admissible. They were not definitely stated, nor did the time, at which made, have reference to any lien, or expected lien, of the creditor. As allowed to be given to the jury, they were calculated to mislead them, because of their generality, and indefiniteness as to period. McBride v. Thompson, 8 Ala. 653; 1 Greenl. Ev. § 108, note 2. If a fraudulent combination had been proved, these declarations might have been given in, to the binding of the claimant; but he was not present, and the declarations were as to what he knew. 2 Paige, 482. The declarations were merely narrative of a past transaction, and could not be received as proof of such transaction. Greenl. Ev. § 110.

HUNTINGTON, contra.

The testimony, as it is set forth in the bill of exceptions, discloses clearly, that there was a combination between the plaintiff in error and the defendant in the execution, to defraud the creditors of the latter. The fact, that the defendant in execution remained in possession of the property, after its purchase at the trust sale by his father-in-law; that there was no difference between its control and management, before and after the sale—is of itself a proof of fraud, which is made only the more glaring, by the circumstance that the defendant in execution was professedly the overseer under the nominal contract, that if he made a good crop, he was to be well paid, and if an indifferent crop, not so well. This, in fact, is no contract at all, and there is therefore nothing to relieve the possession of the defendant in execution from its *prima facie* fraudulent character. In the case of Borland v. Mayo, 8 Ala. 112, it is decided, that the declarations of a conspirator are admissible against his fellow; also, that

where there is proof tending to show fraud on the part of a purchaser of property, and a community of design with his vendor, in such case, when the contest is between the former, and the creditor of the latter, the declarations of the vendor are admissible against his vendee; also, that when the vendor is left in possession of property, and exercises acts of ownership over it after sale, this proves a combination to defraud creditors, and the declarations of the vendor are admissible as evidence against his vendee. This being the state of the present case, the admissibility of the declarations of the defendant in execution, rests upon a different, and more general rule, than that laid down in McBride v. Thompson, and it is therefore insisted, that there is no error in the judgment of the court below.

COLLIER, C. J.—In McBride & wife, et al. v. Thompson, 8 Ala Rep. 650, it was decided that the declaration of a party in possession are admissible as part of the *res gesta;* but are not to be received as evidence to every conceivable extent. " While it is allowable to prove statements of one in possession, and explanatory thereof, it is not permissible to show every thing that may have been said by him in respect to the title ; as that it was acquired *bona fide* and for a valuable consideration ; was paid for by the money of a third person, or his own, &c. This we have seen. instead of being part of the *res gesta*, would be sometheng beyond, and independent of it"—the *res gesta* being the continuous possession of the declarant. The declarations of the defendant in execution, which were admitted by the circuit court, were not restricted to an assertion by him, that he held the slaves as his own property, or under the claimant. They extended beyond this and impugned the validity of a deed of trust, which he had previously executed, and under which, the claimant sought to deduce a title as purchaser. Such testimony transcended the limit laid down in the case cited, and its admissibility cannot be defended upon the ground that it was part of the *res gesta.*

The declararion that the claimant "had got the crop fixed, so that they (his creditors) could not get it," was alike foreign

to the *res gesta,* and should not have been received as explatory of the *subject matter* or *thing done.*

It is however, insisted for the defendant it error, that the proof in the case shows that there was a combination between the claimant and defendant in execution, to defraud the creditors of the latter, and for that reason the declarations, though beyond and independent of the *res gesta,* were properly admitted. To sustain this argument, we have been referred to Borland v. Mayo, 8 Ala. Rep. 104. In that case one of the questions was, whether the declarations of Walker, the vendor, were admissible against Borland, his vendee. We said, "The declarations of a conspirator are admissible against his fellow. Phil. Ev. C. & H's notes, 177, and cases cited. So where there is proof tending to show fraud, on the part of the purchaser of property, and a community of design with his vendor, it has been held that in a contest between the former and the creditors of the latter, the declarations of the vendor, are admissible against his vendee. Clayton v. Anthony, 6 Rand. Rep. 258 ; Reitenbach v. Reitenbach, 1 Rawles' Rep. 362. And it has been decided where the vendor is left in possession of property, and exercises acts of ownership over it after the sale, this proves a combination to defraud creditors, and the declarations of the vendor, are evidence against his vendee. Wilber v. Strickland, 1 Rawles' Rep. 428 ; Willies v. Farley, 3 Car. & P. Rep. 395 ; 2 Phil. Ev. C. H's notes, 178, 601-2. The testimony shows that the integrity of the transaction between the defendant in execution, and the claimant was at least questionable, and that there was no ostensible change of possession. This being the case, the proof of Walker's declarations comes within the principle upon which the authorities cited rest, and are admissible against his vendee, *if competent evidence under the circumstances."*

In the case at bar, the testimony shows, that the slaves by whose labor the cotton in question was produced, were purchased by the claimant early in 1847, at a sale under a deed of trust previously executed by the defendant in execution ; that the claimant took possession of the slaves, but afterwards, on the same or the succeeding day, delivered them to the defendant, as an overseer, to make a crop for him (claim-

ant) during the year 1847, on the plantation where the defendant had resided for several years—saying, that if he made a good crop, he, claimant, would pay him well; but if he failed, he should not be paid so much. The proof shows that the defendant in execution had owned and controlled the slaves, for eight or nine years, and that there was no material change in their management after the claimant's purchase, or in the conduct of the plantation.

The evidence does not indicate there was any unfairness in the sale at which the claimant purchased. It shows that there was an *actual change of the possession*, by a delivery of the slaves to the claimant, by the trustee. Having acquired the possession under his purchase, it cannot be assumed that the contract which the claimant subsequently made with the defendant in execution, to take charge of them for a year, and make him a crop as an overseer, was indicative of a conspiracy between them for the claimant to hold the slaves fraudulently, against the defendant's creditors. Such an inference cannot be predicated of the fact, that the defendant was the claimant's son-in-law. If the defendant was competent to manage the slaves for the interest of the claimant, the relationship might, with propriety, have furnished an additional inducement for his employment—certainly, it was no reason why his services should have been rejected. The fact that there was no known change in the mode of conducting the planting operations, proves nothing adverse to the *bona fides* of the transaction between the claimant and the defendant. Nor can any unfavorable ·deduction be made, because the compensation to the defendant was not explicitly stipulated— it was enough that the claimant promised to pay him well if he made a good crop, and less if he failed. This is quite enough to show that his services were not gratuitously rendered, and that he was entitled to demand as much as they were worth. This view of the facts, sufficiently establishes that the case is distinguishable from the case of Borland v. Mayo. There, the evidence disclosed facts which, *prima facie*, indicated a combination to hinder creditors in the collection of their demands, and a ground was thus laid for the introduction of the independent declarations of the vendor. But here there is nothing upon which the court could rest such a predicate,

and it was therefore incompetent to permit the declarations. The court must be able to infer that the basis was laid, and could not admit the declarations, and tell the jury to disregard them, if there was no combination. It follows from what we have said, that the circuit court erred. The judgment is consequently reversed, and the cause remanded.