# Lehman, Durr & Co. *v.* Kelly & Bro.

*Statutory Trial of Right of Property in Stock of Goods.*

1. *Fraudulent sale of goods by insolvent or failing debtor.*—A sale of his property by a debtor who is insolvent, or in failing circumstances, with the intent thereby to place it beyond the reach of his creditors, or to hinder, delay, or defraud them, will pass a good title to the purchaser, paying full value, *unless* he had knowledge of such fraudulent intent, or was possessed of information which was calculated to put him on inquiry, and which, if followed up, would have led to the discovery of the fraudulent intent ; but, if the purchaser had such knowledge, or the means of acquiring it, the payment of full value for the property is not sufficient to protect him.

2. *Same.*—If the intention or purpose of the debtor making the sale, he being insolvent, or financially embarrassed, is to give a preference among his creditors, at his election, in the subsequent use of the proceeds of sale, this is fraudulent as against his creditors, particularly if the sale was on credit ; and the same rule applies as to the purchaser's participation in the fraud.

3. *Same.*—If the debtor's intention was to delay his creditors until the maturity of the purchaser's notes for the price, the case is within the terms of the statute (Code, § 2124), and the sale is fraudulent as to creditors, although made to prevent a sacrifice of his property by sale under execution, and to get the value of it for the purpose of paying it to his creditors."

VOL. LXVIII.

[Lehman, Durr & Co. v. Kelly & Bro.]

4. *Same.*—It is not necessary that the fraudulent intent should extend to all the creditors, or the creditors generally : if the intent was to hinder, delay, or defraud one or more of them, it is within the statute ; and the fact that the sale was open and notorious, and the payment of a fair and full price are immaterial considerations.

5. *Sufficiency of evidence, charge as to.*—In a civil action, to establish any proposition for either party, it is only necessary that the evidence should produce a reasonable conviction in the minds of the jury ; and a charge asked, requiring that a fact be "clearly" proved, is properly refused.

6. *Intermingling of goods by purchaser; burden of proof.*—If the purchaser of goods from an insolvent debtor intentionally intermingles them with his own goods, and refuses to furnish to the sheriff, seeking to levy an execution on them as the property of the seller, the information necessary to distinguish and separate them, he can not claim any advantage from the confusion of goods; and having interposed a statutory claim to the goods levied on, the duty is cast on him to furnish the evidence necessary to separate his own goods from the others.

7. *Acts and declarations of debtor, prior to sale; when admissible against purchaser.*—The declarations and promises of the debtor, made to plaintiffs' attorney a few days before the commencement of plaintiffs' suit against him, as to making a partial payment with a view to an extension of time as to the residue of the debt, or an assignment of all his property, are admissible evidence for the plaintiffs, as tending to show his purpose in making the subsequent sale to the claimants about two months afterwards, while suits were pending against him ; but such declarations would not affect the claimants, unless brought to their knowledge before their purchase.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. H. D. CLAYTON.

The appellants in this case obtained a judgment in said Circuit Court, on the 9th March, 1876, against Henry Wechsler, for $884.25, besides costs ; and an execution issued on this judgment was levied by the sheriff, on the 29th March, 1876, on a stock of goods, consisting of hardware, dry-goods, groceries, &c., in the possession of M. W. Kelly. A claim to the goods was thereupon interposed by M. W. Kelly & Brother, a partnership composed of M. W. and John R. Kelly, and bond given for a trial of the right of property. In making up the issue, under the direction of the court, the plaintiffs affirmed that the goods were the property of said Wechsler, and were subject to their execution ; which averment the claimants denied, and alleged that they bought the goods for a valuable consideration, and in good faith, before the issue or levy of said execution ; to which the plaintiffs replied, " that the sale of said goods to said claimants was made by the defendant, said Wechsler, to hinder, delay or defraud plaintiffs or other creditors of said defendant of their lawful suits, damages, debts or demands, and claimants bought said goods with notice of the said intent and purpose of said defendant, and by reason thereof said sale is void ;" and the claimants took issue on this replication.

(13)

[Lehman, Durr & Co. v. Kelly & Bro.]

On the trial, it was proved that the sale of the goods by Wechsler to the claimants was made on the 3d March, 1876, at the agreed price of $3,000, of which $1,000 was paid in cash, and for the balance they gave their two promissory notes, of $1,000 each, payable respectively on the 1st October and the 1st December, 1876; and "it was conceded by plaintiffs that the price paid by claimants for the goods was not an under valuation, or not greatly disproportionate to the true value of the goods as a stock." M. W. Kelly, one of the claimants, testified in their behalf as a witness, in substance, that Wechsler had offered to sell them his entire stock of goods nearly a year before the sale; that the negotiations for the sale were pending two or three days; "that they first offered him $2,000 cash, and then $2,500, *and then was when defendant said to John R. Kelly that, before he would take less than $3,000 for his stock of goods, he would let the sheriff sell them;.* that they moved most of the goods on the same day, in the day-time, from Wechsler's store-house, which was just across the street opposite to their own; that their purchase was no secret, but was known to, and talked of by several persons in Columbia, the village in which they and Wechsler carried on their business, at the time of the sale, and before it was consummated; that they knew, at the time of their said purchase, that Wechsler was in debt, and that several suits were pending against him in the Circuit Court, but did not know the extent of his liabilities, nor that he was broke or insolvent; that Wechsler did not tell them, at the time of the sale, why he wished to sell, but, when they gave him their notes, he said he was going to turn them over to some of his creditors; that they made no inquiries, before consummating their purchase, as to the financial condition of Wechsler, nor as to his object or purpose in selling the goods, except that John R. Kelly asked him, during the negotiations, if there were any mortgages, judgments, or liens against the goods, and Wechsler replied that there were none."

Wechsler was examined as a witness for the claimants, and testified, in substance, "that when he sold out to the claimants, he had about $6,000 due him in notes and accounts on his customers, most of which he believed he could have ultimately collected, if he had been allowed to go on with his business; that the plaintiffs and other creditors, who sued him to the March term of the court, 1876, would not grant him the terms of extension he asked for, and he resolved to sell out, and sold his goods to the claimants, to keep the sheriff from selling them, and to enable him to realize the money for them, and to pay such of his creditors as had not

[Lehman, Durr & Co. v. Kelly & Bro.]

pressed him, and to use the balance for the support of his family, as he knew he could claim $1,000 thereof as exempt for that purpose; that he never told the claimants what his object or purpose was in selling said goods, but told them, in reply to a question by John R. Kelly, that there were no mortgages, judgments, or liens against the goods. He was asked, on cross-examination, if he did not sell said goods to the claimants to prevent the plaintiffs, and other creditors then suing him in this court, from subjecting said goods to sale under executions in their favor, or to hinder, delay, or defraud them in the collection of their said debts against him; and answered, that his object in selling was to place it in his power to pay those who wore not pressing him; that he knew the effect would be to hinder and delay those who were pressing him." He admitted that, at the time of the sale to the claimants, suits were pending against him, in which judgments were rendered a few days afterwards, amounting to about $5,000; and that he then owed other debts amounting to nearly $4,000. With the money received from the claimants, he said that he had paid some debts, specifying two which amounted to about $350, and that he kept the residue for his own uses; and that he had transferred one of the notes to a New York creditor to whom he was indebted, and had sold the other in Eufaula, and was using the money for the support of his family.

"On further cross-examination of said Wechsler, plaintiffs asked him, if he did not go, about the 1st January, 1876, to the office of W. C. Oates, who then held plaintiffs' claim and several other claims against him for collection as attorney, and then and there tell said Oates that he could not pay his debts; and if he did not cry, and ask Oates for an extension of the time of payment of said claims; and if Oates did not tell him that, if he would pay one-half within fifteen days from that time, although he (Oates) had no express authority, he would take the responsibility to wait for the other half until the following fall; and if he did not accept said proposition, and pledge his honor as a man to said Oates that, if he failed to pay the one-half of said claim within fifteen days, he would return to the office of said Oates on or by the 15th January, 1876, and make an assignment and clean surrender of all his goods and other property subject to execution, for the benefit of all his creditors; and if he did not in fact utterly fail to make any of said payments, and likewise fail to comply with his promise to return and make the assignment, and by this abuse of the confidence of said Oates cause said suits to be commenced against him." The bill of exceptions

states, that the court "here interposed *ex mero motu*, and it
appearing that the said conversation was confidential, and
for the purpose of compromise, refused to allow the witness
to answer; to which ruling the plaintiffs excepted."

The plaintiffs introduced evidence showing that the embar-
rassed condition of Wechsler, at the time of the sale to the
claimants, was known to several of the business men in the
village of Columbia, if not generally known; that the claim-
ants, on removing the goods into their store, erased Wech-
sler's marks, and placed their own marks on them; and that
when the sheriff came to Columbia, a few days afterwards,
M. W. Kelly removed some of the goods by night, from his
store, into an outhouse on his premises, and kept them there
until he sent them off.   Said Kelly admitted this removal of
the goods to the outhouse, and said that it was done to make
more room in the store for other goods, and that these goods
were sent to his brother in a village in Dale county, where
they had another store.   The deputy-sheriff, who levied the
execution, was examined as a witness for the plaintiffs, and
thus testified, among other things:  "Witness demanded
the goods of M. W. Kelly, who refused to deliver them, or to
point them out; and witness then took possession of claim-
ants' store, assisted by Mr. Blackwell, and proceeded to
make the levy.   Witness several times would ask said Kelly,
who was present, about parcels of goods which he could not
readily distinguish as belonging to the Wechsler stock; when
Kelly would reply, '*That is your business, you are making the
levy, and it is not my business to help you,*' and refused to give
him any information as to the quantity of the goods in bulk,
box, or package, or as to whether they belonged to the Wech-
sler stock; and that the marks on the goods had been so
changed, or torn off from some of the goods, that he could
not distinguish a portion of the Wechsler stock from the
other goods, except as Mr. Blackwell, who knew some of
the goods, was able to point them out to him."   Another
witness for the plaintiffs, who was a clerk in Wechsler's store
at the time of the sale to the claimants, testified that M. W.
Kelly came into the store, about three days before the sale,
"and asked him if he knew that Wechsler was broke, and said,
'*Yes, he is broke, and I am going to buy his goods, if I can get
them at my price.*'"   There was other evidence, also, but it is
not material to the points decided by this court.

The plaintiffs requested several charges, which were in
writing, and of which the following were refused.

"3.   If the jury believe, from the evidence, that the plain-
tiffs' execution was levied upon goods which belonged to

[Lehman, Durr & Co. v. Kelly & Bro.]

Wechsler, the defendant in execution, while plaintiffs' debt was subsisting; and that said goods were in his possession up to the 3d day of March, 1876; and that said Wechsler, on that day, for the purpose, or with the intent to hinder, delay or defraud the plaintiffs, or any of his other creditors, of their lawful suits, damages, forfeitures, debts or demands, sold said goods to the claimants; and further, that the claimants, or either of them, at or before the time they made their purchase of the goods, said that Wechsler 'was broke,' and they knew that he was financially embarrassed, or insolvent, and was being pressed by his creditors, and that some of them were suing him in the courts; and that said defendant, while the negotiations for the sale of the goods were going on, told either of the claimants that, before he would take a certain named price for the goods, he would let the sheriff sell them; then it was the duty of the claimants, before they purchased said goods, to have informed themselves, by such inquiries as were reasonably accessible to them, of the true financial condition of said Wechsler, and of his object and purpose in selling, or offering to sell the goods; and if, by such inquiries, they could have obtained information sufficient to have satisfied the mind of a reasonable and discreet man that Wechsler did intend, by the purposed sale of said goods, either to hinder, delay, or defraud plaintiffs, or any of his then existing creditors, in the collection of their debts against him; then, whether claimants made such inquiries, or failed to make them, and notwithstanding they may have paid full value for the goods, they can not be considered purchasers in good faith, and the jury should find for the plaintiffs, and find the goods subject to their execution."

"5.  If the jury find for the plaintiffs, they must find the value of each article levied on separately, according to the evidence before them, except where the evidence shows that any particular article or piece of the property levied on did not belong to the stock sold by Wechsler to the claimants; and if the jury believe, from the evidence, that the claimants intentionally intermixed said goods with their other goods, and so changed the marks, that the officer making the levy could not distinguish or identify the said goods which claimants bought from Wechsler; and that the claimants, at the time when the officer went to their store to make the levy, refused to point out the said Wechsler goods, and have not offered evidence on this trial which clearly shows what portion of the goods levied on did or did not belong to the said Wechsler stock, then the jury must assess the value of all the goods so levied on, and not proved to be of the claimants' other goods."

The court gave the following charges to the jury, at the request in writing of the claimants:

"1. If the jury believe, from the evidence, that Wechsler intended to prevent a sacrifice of his property by a sheriff's sale under execution, and that his intent in selling to Kelly & Brother was to get the value of his property for the purpose of paying it to his creditors; then the sale was valid, although Kelly & Brother knew Wechsler's intent.

"2. If the jury believe, from the evidence, that Wechsler was insolvent at the time of the sale of the goods to the claimants, and sold the same for the purpose of paying preferred creditors, and for this purpose alone; then the purchase by Kelly & Brother was valid, even if the jury should believe, from the evidence, that they had knowledge of Wechsler's insolvency.

"3. If the jury believe, from the evidence, that Wechsler's sale was made by him for the purpose of paying preferred creditors, and that he did apply the proceeds to the payment of such creditors, reserving what he thought was about equal to his exemptions under the law; then the sale to Kelly & Brother was valid.

"4. Mere knowledge of Wechsler's insolvency by Kelly & Brother is not sufficient to render the sale void, unless the object of Wechsler was to hinder, delay, or defraud creditors, and this purpose was known to Kelly & Brother.

"5. If the jury believe, from the evidence, that the sale by Wechsler was intended to supply the means of paying just debts, then the sale is not fraudulent and void, merely because it may also have been intended as a means of preventing execution creditors from sacrificing his property, and thus defeating the collection or payment of other debts. The intent to delay certain creditors from the collection of their debts by the due course of law, though known, and so far concurred in by Kelly & Brother, will not necessarily vitiate the sale. If it is made with the intent, also, and as the means of paying other creditors, or all creditors, and upon terms reasonably calculated to answer that purpose in a satisfactory manner, and to the extent of the value of the property, it cannot be condemned, merely because it may have been intended by Wechsler to obstruct some of his creditors in the legal coercion of their debts, although this intention may have been known to Kelly & Brother.

"7. The jury can not find for the plaintiffs in this suit, unless they believe, from the evidence, that the purpose and intent of Wechsler in making the sale of the goods was to hinder, delay, or defraud his creditors generally, and this pur-

pose and intent·was known to Kelly & Brother, and partici-
pated in by them.

" *B.* If the proof shows that the sale of the goods was
open and notorious, and there was no concealment of it, and
that a fair and full value and price has been paid for the
goods by Kelly & Brother; then such proof constitutes a
strong circumstance to rebut the presumption of fraud, if any
such presumption arises out of the evidence.

" *D.* That the notice to Kelly & Brother, which the law
charges as necessary to affect them, must be notice of an
intent on the part of Wechsler to hinder, delay, or defraud his
creditors; and before they can be made liable, the evidence
must satisfy the jury that Kelly & Brother co-operated or
concurred with Wechsler in his original design (if such was
the fact), or·by a constructive co-operation or concurrence
with Wechsler, from notice of such design, and from carrying
such design into operation with such notice.

" *E.* Where an allegation, whether negative or affirma-
tive in form, involves a charge of·fraud, the burden of proof
is upon the party making the charge. In this case, it is upon
the plaintiffs; and it makes no difference whether they at
any stage of the trial made out a *prima facie* case on their
side, if the claimants afterwards have shown to the jury by
proof that they purchased the goods at open and notorious
sale, and at a fair and full price, then the burden of proof is
shifted back on the plaintiffs; and before the jury can find
for the plaintiffs, they must satisfy the jury by evidence that
Wechsler made the sale with the intent to hinder, delay, or
defraud his creditors, and that Kelly & Brother participated
in said intent of said Wechsler."

The plaintiffs duly excepted to each of these charges as
given, and also to the refusal of the 3d and 5th charges asked
by themselves; and they now assign these matters as error,
together with the several rulings of the court on the evidence
to which they reserved exceptions.

W. C. OATES, and THOS. H. WATTS, for appellants.

D. M. SEALS, and CLOPTON, HERBERT & CHAMBERS, *contra.*

STONE, J.—In *Crawford v. Kirksey* (55 Ala. 282, 293),
speaking of sales upon a new consideration, and not in pay-
ment of a debt, we, after mature consideration, announced
the following proposition: "If the seller be insolvent, or in
failing circumstances, and the purchaser knows, or is in pos-
sesion of information reasonably calculated to stimulate

inquiry, and which, if followed up, would lead to the discovery that the purpose of the seller is to put his property beyond reach, or otherwise to delay, hinder or defraud his creditors; then, a purchase under these circumstances, though full consideration is paid, is invalid as against creditors. But, if the purchase be made without such knowledge, and without such information as reasonably to put him on inquiry, he acquires a good title, no matter how fraudulent the intent of the seller."

In *Covanhovan v. Hart* (21 Penn. St. 495), C. J. BLACK declared the principle in the following language : "If a debtor, with the purpose to cheat his creditors, converts his land into money, because money is more easily shuffled out of sight than land, he, of course, commits a gross fraud. If his object in making the sale is known to the purchaser, and he, nevertheless, aids and assists in executing it, his title is worthless as against creditors, though he may have paid a full price."

In *Hopkins v. Langton* (30 Wisc. 379), a case of alleged sale of goods to defraud creditors, the judge below, in instructing the jury, had said : "I mean, you should not charge the plaintiffs with notice of the fraudulent intent of the Red River Company, so as to avoid the sale, unless they had before them, at the time these goods were purchased, good and substantial evidence of it, such as sends conviction home to the mind, and establishes a well-founded belief—nothing short of this would be sufficient to charge them with knowledge, so as to defeat their recovery in this action." The revising court said : "This instruction * * must be regarded as a modification of all the others, and was, in substance, informing the jury that, to charge the plaintiffs with notice of the fraudulent intent of their vendors, or to put them upon inquiry which, if omitted, was equivalent to notice, the plaintiffs must have had, at the time of the purchase, actual knowledge of the fraudulent intent, or such evidence of it before them, as would have been sufficient to establish the fact in a court of justice. A proposition so wide from the true rule of law governing in such case, requires no argument to elucidate it." That court, in the same case, had previously said, it was sufficient, if the proof showed "knowledge by the vendee of the fraudulent intent, or the existence within his knowledge of other facts and circumstances, naturally and justly calculated to awaken suspicion of it in the mind of a man of ordinary care and prudence ; thus making it his duty to pause and inquire, and a wrong on his part not to do so, before consummating the purchase."

It will be seen that, under these authorities, a sale, such as we are considering, is fraudulent and inoperative, if intended by an insolvent seller to delay, hinder, or defraud his creditors, and that intent be known to the purchaser, or if he be in possession of information reasonably calculated to stimulate inquiry, and which, if followed up, would lead to a discovery of the seller's fraudulent purpose. The underlying morals, on which this sound principle of law rests, are, that it is the legal duty of every debtor to keep his property open to the claims of his creditors, and to make no effort to secrete it, or to sell it, otherwise than for the honest purpose of paying his debts, or some of his debts. If he secrete his property, or if he sell it with the intent or purpose of delaying, hindering, or defrauding his creditors—either one of the three purposes stamps his conduct as fraudulent, even if he sell for the full value ; and the purchaser, although paying full value, acquires no valid title against the vendor's creditors, if he aid him in consummating the fraud. He renders sufficient aid to invalidate his purchase, when he knows the seller's fraudulent intention in making the sale, or has knowledge of facts and circumstances, naturally and justly calculated to awaken suspicion in the mind of a man of ordinary care and prudence, of the fraudulent intent of the seller. The cases of *Brown v. Force* (7 B. Monroe, 357), and *Brown v. Smith* (*Ib.* 361), can not be followed. Neither is the language of Mr. Bump on this question—Chap. 8, paragraph 2 —sufficiently accurate to be made a test or guide.

In *Borland v. Mayo* (8 Ala. 104, 114-5), is this language : "If a debtor, in failing circumstances, makes a transfer of his property to a third person, which is intended, both by the vendor and vendee, to prevent what they considered a sacrifice by sale under execution, and thus enable the vendor afterwards to give a preference to his own proper creditors, over those to whom he was liable as a surety, such transaction is a fraud upon the creditors who are hindered or delayed in the collection of their demands. There can be no question that an assignment, made under such circumstance, is inoperative." This court, *arguendo*, added : "If the vendor had reserved to himself, by a stipulation on the face of the deed, the right to direct the appropriation of the money, such stipulation would have been void against judgment creditors ; and the legal conclusion must be the same, although the deed is silent upon the subject, if the sale is the result of a fraudulent combination between a failing debtor and a third person, to defeat the creditors of the former." There is evidently a verbal inaccuracy in the above. The context

proves it. Where it is said, "such stipulation would have been void," the language, to convey the idea intended, should have been, 'such stipulation would have rendered the conveyance void.'

There can be no doubt that this is a correct principle. If a debtor, either insolvent, or in failing circumstances, sell his property—particularly, if he sell it on credit—having at the time the purpose or intention of giving a preference in the subsequent use of the proceeds, as he might elect; and if his insolvency and intentionally reserved election be known to the buyer, or if the buyer have such information as to put him on inquiry, which, if followed up, would lead to the discovery of such intention, this would both delay and hinder the creditors not preferred; and the purchaser, as against such creditors, would acquire no valid title, even though he promised and paid full value for the property. Such loss is visited on the purchaser who thus buys, by reason of the fraud he has enabled the seller to perpetrate; enabled, by purchasing his property, with knowledge, actual or constructive, of the seller's fraudulent purpose. But, if the purchaser buy in good faith, pay a fair and reasonable price, without knowledge, or such information awakening suspicion, as, if followed up, would lead to knowledge of the seller's fraudulent purpose; then such sale would be valid, no matter how fraudulent the seller's purposes may be. And this is right, alike in morals and in law. It protects the purchaser, who innocently pays his money for another's goods, in ignorance of the seller's wicked purpose to delay, hinder, or defraud his creditors. It visits deserved punishment upon him, if, knowing the fraudulent purpose of his vendor, he aids him by becoming the purchaser of his goods. In the one case, he acts in good faith, and must be protected. In the other, he acts in bad faith and bad neighborhood, by enabling the seller to defraud his creditors; and the law extends him no mercy.

Applying the principles stated above to the rulings in the present case, we will first consider the charges given at the request of the claimants. Charge No. 1 was erroneous. The sale—two-thirds of it—was on time. This necessarily had the effect to delay creditors. The charge ignores this, and, in effect, instructs the jury, that notwithstanding Wechsler's intent was to delay his creditors, yet, "if he made the sale to prevent a sacrifice of his property by a sheriff's sale under execution, and his intent in selling to Kelly Brothers was to get the value of the property for the purpose of paying it to his creditors, then the sale was valid, although Kelly

& Brother knew his intent." The hypothesis of this charge, as we interpret it, is, that although Wechsler, in making the sale, had the intent to delay his creditors until the maturity of the purchase-money obligations, and to hinder them in procuring a sale under legal process, and although Kelly & Brother knew this was his intent; yet, if his purpose was to pay the proceeds of the sale to his creditors, the sale was valid. Such is not the law. Shall not delay, hinder, or defraud—either of the three—is the language of the statute. Code of 1876, § 2124. This charge is, also, subject to criticism in this; that it allows to an insolvent vendor an undefined discretion, or caprice, in the future direction of the proceeds of his goods, even when sold for the purpose of raising a fund to apply to his debts.—*Borland v. Mayo, supra.*

Charge No. 3 is objectionable, for the same reason. No. 5 is erroneous. No. 7 is faulty, because it requires too much. If the intent be to defraud one or more creditors, that is enough. It is not necessary that the fraudulent intent should embrace his creditors generally, or all his creditors. If Wechsler's intention, in making the sale, was to delay, hinder, or defraud his creditors, or some of them, and if the proof charges Kelly & Brother with knowledge of that intent; then, the fact that the sale was open and notorious, and for a fair and full price, should exert no influence in the determination of the cause.

The court erred in giving charge *B*. This is not of the class of cases, to which the principle invoked applies. If the testimony tended to show that Kelly & Brother purchased, or pretended to purchase, that they might hold in secret trust for Wechsler, then openness and notoriety, and full price paid, would be circumstances the jury should weigh, in determining whether or not there was a secret trust.

Charges *D* and *E* are substantially correct. So is charge 4, as given at the instance of claimants. If they were calculated to mislead, that was a subject for an explanatory charge. Charge 6 is not assigned as error, and we will not consider it.

The 3d charge asked by plaintiffs is objectionable in form, and was calculated to confuse the jury. The hypothesis is based, partly, on facts to be found, and partly on declarations alleged to have been made by and to the claimants. Moreover, it pretermits all mention of some facts the testimony tends to prove. The facts supposed are each of an indeterminate character, though, each and all, if true, tended to excite suspicion. If, by any fact or facts, or circumstances, out of the usual routine, claimants were reasonably

[Cummins v. Beaumont.]

informed, or their suspicions aroused, that the purpose of Wechsler was to prevent his goods from being sold by the sheriff, he being in failing circumstances, and that for this purpose he was selling them on credit, that he might realize a better price, and leave him free to appropriate the proceeds as he might afterwards determine; then, if such in fact was Wechsler's intent, Kelly & Brother would not acquire a good title by their purchase. Facts, not documentary, or of record, but simply *in pais*, will not justify a stronger statement of the rule.

Charge No. 5, asked by plaintiffs, would be correct, if it did not contain the word "*clearly*," in defining the measure of proof, necessary to a proper separation of the goods. This is a civil action; and all that is necessary to establish any proposition for plaintiffs or claimants, is reasonable conviction. On the hypothesis of this charge, the duty would be cast on the claimants of furnishing the means of separating goods clearly theirs, from those sought to be made subject to Wechsler's debt. A charge, thus framed, would be free from error.—*Bond v. Ward*, 7 Mass. 123; *Shumway v. Rutter*, 8 Pick. 443; *Taylor v. Jones*, 42 N. H. 25.

The question put to Wechsler on cross-examination, and ruled out, was permissible. It tended to show the conduct and purpose of the seller. It would not affect Kelly & Brother, unless brought to their knowledge before they purchased.

The court should have suppressed that part of the answer of claimants to the 3d interrogatory, which is in the following language: "Said agent expressed himself well satisfied with the offer and conduct of said Wechsler." It was not responsive to, nor explanatory of any part of the interrogatories propounded.

Reversed and remanded.