## Delaware vs. Ensign.

P. by a bill of sale, dated July 7, 1853, after reciting that he was the owner, subject to a chattel mortgage, executed the May previous, to D., of certain goods in a store at S., and of certain other goods on the way from Troy, in consideration of a full set of tin tools, and fifty dollars, and some plate or sheet tin, sold and transferred to the plaintiff all his goods, wares and merchandise in the store and on the way for the store; also all the notes, accounts and obligations for goods, wares and merchandise sold. P. was indebted to various persons, at the time of executing this bill of sale, and had just been purchasing goods for the store. The plaintiff took possession of the property on the same day. On the 8th of July P. confessed several judgments, to different individuals, on which executions were issued, and the defendant, as sheriff, by virtue of such executions, on the 9th of July, levied upon the property so conveyed to the plaintiff. On the 8th of July, a portion of the goods were secretly removed from the store, in the night, and were found at the plaintiff's house.

*Held* that the wholesale nature of the transaction—selling goods recently purchased and not yet received, including debts not examined or inventoried—the inadequacy of consideration agreed to be paid—and the secret removal of property immediately after the sale—emphatically indicated a dishonest purpose; and that it was a fair question for the jury to determine, from the evidence, whether the sale was not made with intent to hinder, delay or defraud creditors in the collection of their debts, and therefore fraudulent and void as against them; and that there being evidence before the jury, upon that question, their verdict in favor of the plaintiff was to be regarded as conclusive. James, J., dissented.

Where it is the purpose of the parties to a chattel mortgage to permit the mortgagor to retain the possession of the mortgaged property, and sell and dispose of the same as he pleases, and as his own, the mortgage is fraudulent and void, as to the creditors of the mortgagor.

And the possession of the property, by the mortgagee, under such void mortgage, will give him no right to the property, any more than if he had obtained the possession by a trespass. The property remains the mortgagor's, and is liable to seizure and sale under an execution against him.

A statement, made on entering a judgment by confession, which alleges that "the above indebtedness has arisen for goods, wares and merchandise sold and delivered to me by the said plaintiffs in the month of May, 1853," and shows that the same is justly due, without any fraud whatever, is sufficient.

A verification of such a statement, by which the debtor swears that "he believes the above statement of confession is true," is a sufficient verification.

MOTION by the plaintiff for a new trial, upon a case. The complaint contained three counts or causes of action. The first charged the defendant with unlawfully taking from the

plaintiff a quantity of personal property and converting the same to his own use. The second charged the defendant with unlawfully refusing to deliver to the plaintiff a quantity of personal property belonging to him, and with unlawfully converting the same to the defendant's use. The third count charged the defendant with unlawfully and forcibly breaking and entering the plaintiff's close and freehold, and with seizing and carrying away a quantity of personal property belonging to the plaintiff. The answer denied the allegations of the complaint, and set up that the defendant took the property as sheriff of the county of Essex, under several executions issued on judgments against one Benjamin K. Potter, and averred that the property at the time of the seizure, &c. was the property of Potter.

On the trial the plaintiff proved that the defendant, by one of his deputies, took the property, on the 9th of July, 1853, and sold it on the 20th. Potter had owned the property prior to and until the 7th of July, when he executed a bill of sale thereof to the plaintiff. The plaintiff put in evidence a personal mortgage, dated May 6, 1853, made by B. K. Potter to Orin Delaware, to secure the payment of eleven hundred dollars. This mortgage described the property as follows : " all the goods, wares and merchandise mentioned and set forth in the schedule hereto attached and referred to, and all the other goods and chattels whatsoever mentioned and expressed in the schedule hereto annexed, now remaining and being in the village of Schroon, Essex county, and a part in North Hartford, Washington county, which are to be removed immediately to Schroon aforesaid." The schedule described a small stock of dry goods and groceries and some hardware. The mortgage was assigned by Orin Delaware to the plaintiff by an endorsement thereon, dated June 25, 1853. By the terms of the mortgage, the mortgagor and his assigns had the right to take the property on demand.

The plaintiff also put in evidence a bill of sale from Potter to him, dated July 7, 1853, by which, after reciting that Potter was the owner, subject to the mortgage, of certain goods in the

Delaware *v.* Ensign.

store situated in Schroon, and certain other goods on the way from Troy, and in consideration of a full set of tin tools and fifty dollars, and some plate or sheet tin, he sold and transferred to the plaintiff all his goods, wares and merchandise in the store and on the way for the store; also, all the notes, accounts and obligations for goods, wares and merchandise sold in Schroon, and the plaintiff released Potter from the mortgage. Potter put into the store $900 worth of goods after this mortgage was executed. Potter, indeed, made this amount something over $1600. For several days prior to the sale effected on the 7th of July, and on that day, Potter was much intoxicated. The plaintiff took possession of the property, under the sale, on the 7th, and on the 8th Potter confessed several judgments on which executions were issued, and under which levies were made on the 9th July.

In the course of the trial, the plaintiff objected to the evidence that Potter was drunk when he executed the bill of sale, on the 7th of July, which objection the court overruled, and the plaintiff's counsel excepted. The plaintiff's counsel also objected to the proof that Orin Delaware purchased the debts in Troy against Potter. This objection was overruled, and an exception noted. When the defendant's counsel offered in evidence the judgment on which the executions issued, it was objected that the consideration thereof was not sufficiently set forth; and secondly, that the verifications were insufficient. The objections were overruled, and exceptions noted.

There was evidence tending to show that goods had been surreptitiously taken from the store on the night of the 8th of July, some of which were found at the plaintiff's house.

No exception was taken to the charge of the judge. The jury found a verdict in favor of the defendant.

*Kellogg & Hale*, for the plaintiff.

*H. H. Ross*, for the defendant.

BOCKES, J.   If Potter was not too much intoxicated when he sold out his stock in trade and demands to the plaintiff, to have any intent whatever, it was a fair question for the jury to determine from the evidence, whether the sale was not made with intent to hinder, delay or defraud his creditors in the collection of their debts.   The wholesale nature of the transaction—selling goods then but recently purchased and not yet received—including debts not examined or inventoried ; the inadequacy of consideration agreed to be paid, and the secret removal of property immediately after the sale, emphatically indicate a dishonest purpose.

Undoubtedly the jury so regarded the case, and intended by their verdict to pronounce the sale fraudulent and void as to Potter's creditors.   It is not surprising that his friends should have made an effort to protect his property, fearing he might squander it during his debauch, but the effort should have been conducive either to the benefit of his family or of his creditors ; yet the latter was spurned by the plaintiff when approached in regard to their claims against him, and it does not appear that the former were to receive any advantage from the plaintiff's interference.   Indeed this suit was prosecuted on the theory that by the sale the plaintiff became fairly, honestly and absolutely the owner of the property.

The trial, too, was conducted on the theory of title in the plaintiff by virtue of the bill of sale, which released Potter from the mortgage ; and the mortgage was by an indorsement declared foreclosed.   If the sale was fraudulent as to Potter's creditors, the verdict of the jury was correct ; and there being evidence of this fact, it must be regarded conclusive.   Perhaps it should be observed in regard to the mortgage, that if it was the purpose of the parties to it, to permit the mortgagor to retain the possession of the mortgaged property, and sell and dispose of the same as he pleased and as his own, then the mortgage was fraudulent and void as to Potter's creditors.   (*Griswold* v. *Sheldon*, 4 *Comst.* 580.)   The evidence showed clearly that such was their purpose, and that it was practically carried out.   The mortgaged goods were placed in the store of the

mortgagor, and he retailed them as occasion permitted, and this course was evidently designed by the parties when the mortgage was made.

The plaintiff, therefore, could claim nothing by virtue of the mortgage, as against Potter's creditors. The plaintiff's possession under a void security gave him no right to the property. It was the same, as against any of Potter's creditors, as if he had obtained his possession by a trespass. Therefore, admitting that the plaintiff had the possession under the mortgage, granting it to be void as against those who deny its validity, the property remained Potter's, and liable to seizure and sale under execution against him.

It is hardly necessary, perhaps, to consider the case in this view, for the plaintiff evidently claimed title on the trial only under the pretended purchase of July 7th. But if we take the alleged mortgage lien into consideration, it is difficult to see how even two sales, both of which were fraudulent, hence void, could pass to the plaintiff any title to the property. A person can secure no right from any number of transactions which are void.

It was not error to admit the evidence that Potter was intoxicated when the bill of sale was executed by him. The defendant had a right to inquire into his state and condition, as a part of the transaction. Perhaps he was the more ready to consummate a fraudulent design when partially bereft of reason, and when incapacitated for the proper exercise of his judgment. Nor can it be deemed error, that Orin Delaware was permitted to be examined in regard to his purchase of debts against Potter. He was on a cross-examination. He had assigned the mortgage to the plaintiff, and had become identified with, and had greatly interested himself in the affairs of Potter and of the plaintiff. It was not inappropriate for the defendant to inquire into the extent of his interest and connection with the transaction under examination.

The defendant justified the taking of the property under four executions issued on as many judgments. The judgments were

entered by confession, without action.  The statement in each case was in form substantially the same, and gave the amount for which judgment might be entered, and authorized its entry therefor.  It stated 'the facts out of which the indebtedness arose, as follows.  "The above indebtedness has arisen for goods, wares and merchandise, sold and delivered to me by the said plaintiff, in the month of May, 1853."  The statement also showed that the sum was justly due without any fraud whatever. On the trial it was objected that the statement did not state concisely the facts out of which the indebtedness arose. (*Code,* § 383.)

In *Reid* v. *Clark et al.* decided at the last May general term of this court, this point was subtantially determined.  In that case the statement alleged that the " indebtedness arose on account of goods purchased, consisting of cloths, trimmings and tailor's furnishing goods."  This was held to be a sufficient compliance with the requirements of the code.  The object of this allegation in the statement is to prevent frauds, by giving all who have an interest to learn the facts, notice of the consideration of the judgment.  On obtaining this information the inquiry could be pushed with certainty, and generally with effect, in case of any unfair practice.  It was said in *Reid* v. *Clark et al.* that the old form of declaring for goods, wares and merchandise sold and delivered was no more specific than this form of statement ; and unless a bill of particulars must be inserted, this mode of statement on confession should be deemed sufficient.  The case is widely different from those where the indebtedness is alleged to have arisen on promissory notes, without giving their consideration.  In those cases there is a wide field open for fraud ; and besides, the note is but the evidence of debt, and the code requires the facts out of which the debt arose to be concisely stated.

The case of *Schoolcraft* v. *Thompson,* (7 *How.* 446,) holding a different doctrine from that above suggested, was reversed on appeal.  (9 *How.* 61.  *See also Post* v. *Coleman, Id.* 64.)

It is further objected, that the verification in each of the cases

was insufficient. The verifications were alike in the four cases, and were as follows: " County of Essex, ss. Benjamin K. Potter, defendant, being duly sworn, says, he believes the above statement of confession is true." [Signed and sworn to.] The code requires that the statement be " *verified by his oath.*" If a defendant shall be required in all cases to swear that the statement *is true*, without adding *as he believes*, or *to the best of his belief*, or that he *believes it to be true*, there will be many cases where the party cannot secure to a deserving creditor the preference which he ought to have. Suppose haste necessary, rendering it impossible to ascertain immediately the precise sum a debtor may owe his creditor to whom he wishes to give a judgment; unless this mode of verification may be adopted, the judgment could not be confessed. To hold this form good, would work no injustice; for if the judgment should be for too much, it could be reduced, on determining the precise amount; and in case the plaintiff should refuse, the court would compel its reduction, on the application of the defendant, or of any other person interested. Nor should a judgment, if entered for too much, in a fair, open and honest effort to secure a claim, be held wholly invalid. And if entered for a dishonest purpose, it should be held void, even though entered for a debt due. A person should not lend his claim any more than give his personal efforts to carry out a fraudulent design. The defendant, on such an affidavit, could be convicted of perjury. He would not be allowed to shield himself from the consequences of crime, on the pretense that he swore only to his belief, unless he had good grounds for such belief. In my judgment the statements were duly verified.

It is insisted that the objections to the statements and verifications raise only questions of regularity, which can only be urged by the defendant in the judgments. But the conclusion at which I have arrived renders a discussion of this suggestion unnecessary. I will however add, that this is not a case, like that of *Chappel* v. *Chappel,* 2 *Kernan,* 215,) where the party attacking the judgment had obtained rights by the entry of a

---

Hyde *v.* Cookson.

---

subsequent valid judgment.   In this case the plaintiff's rights do not depend on his success in a race. of diligence, but on his own integrity.

The motion for a new trial must be denied.

C. L. ALLEN, J., concurred.

JAMES, J., dissented.                    New trial denied.

[ST. LAWRENCE GENERAL TERM, September 3, 1855.   *C. L. Allen, Bockes* and *James,* Justices.]