# Leinkauff & Strauss *v.* Frenkle & Co.

*Bill in Equity by Creditors to Set Aside Fraudulent Conveyance of Debtor.*

1. *Conveyance by embarrassed or insolvent debtor to creditor; validity as against other creditors.*—A *bona fide* creditor, knowing that his debtor is embarrassed, or insolvent even, may use extraordinary haste in collecting his demand, to the extent of purchasing everything the debtor has, leaving nothing for other creditors; but he must pay a reasonably fair price for the goods or property purchased, and secure no benefit to the debtor which the law would not give him in the absence of the contract.

2. *Same.*—In this case, the creditor's demand being $5,700, and he purchasing the debtor's entire stock of goods at the gross sum of $6,200, of which he paid $1,000 in cash, leaving $500 of his debt unsatisfied; these facts bring the case within the principle settled in *Levy v. Williams*, 79 Ala. 171, and stamp the transaction as fraudulent.

3. (*On application for rehearing.*) *Recital, in conveyance, of partner-*

[Leinkauff & Strauss v. Frenkle & Co.]

*ship of husband and wife, the grantors : coverture of wife no obstacle to decree condemning partnership property.*—The complainants suing as creditors of the mercantile partnership of S. A. M. & Co., alleged to consist of S. M. and his wife, and seeking to set aside, on the ground of fraud, a sale and conveyance of their entire stock of goods by said partnership; the bill of sale, which was made an exhibit to the bill, and in which the partnership was described as consisting of the husband and wife, is sufficient proof of the fact of partnership, as against the unsworn answers of the defendants, averring that the business belonged to the wife alone; and .the fact of the partnership being established, the coverture and incapacity of the wife, one of the partners, is no obstacle to the decree condemning the goods as the property of the partnership.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. THOMAS COBBS.

The original bill in this case was filed 30th May, 1881, by Leinkauff & Strauss, and others, as creditors at large of S. A. Myer & Co., an alleged mercantile partnership formerly engaged in business at Tuskaloosa, Alabama, composed of Solomon Myer and his wife, Sarah A. Myer, against the said S. A. Myer & Co. and Louis Frenkle, who was engaged in business at Mobile, Ala., under the firm name of Louis Frenkle & Co. The complainant creditors sought to set aside, as fraudulent, a conveyance of personal property, executed January 10th, 1881, by said Solomon and Sarah A. Myer to the said Louis Frenkle & Co., by the terms of which conveyance, a copy of which was made an exhibit to the bill, the entire stock of goods, wares and merchandise then in the store of the said S. A. Myer & Co , together with all the notes, liens, accounts and bills receivable held by them, were transferred to the said Louis Frenkle & Co. for a recited consideration of $6,200 in money—"a large part of said sum of money consisting" as recited in this instrument "in indebtedness due from the said S. A. Myer & Co. to the said Louis Frenkle & Co. for actual cash advances made to said S. A. Myer & Co. in the year 1880." The bill averred the creation and existence of the debts due the several complainants; and charged that the consideration recited in said conveyance was wholly, or in large part, simulated and fictitious; that the cash advances made to said S. A. Myer & Co., if such advances were actually made, fell far short of the amount specified in said conveyance; that said pretended sale, though purporting on its face to be absolute and unconditional in its terms, was coupled with a fraudulent agreement or understanding and secret trust, and was executed in pursuance of a fraudulent and collusive arrangement designed to enable the said Louis Frenkle & Co. "to receive a preference in the payment of their claim against said S. A. Myer & Co. by hindering and delaying other creditors, after

[Leinkauff & Strauss v. Frenkle & Co.]

payment thereof, and in consideration thereof, to return the surplus to said S. A. Myer & Co., or pay over the same upon their order, and that said Solomon Myer should be retained in said store as a clerk for excessive wages and get his supplies therefrom, and derive other benefit from said pretended sale to the hindering, delaying and defrauding of complainants and other creditors of said S. A. Myer & Co." The bill further alleged that no schedule or inventory was attached to said conveyance; that said conveyance embraced substantially all the available assets of said S. A. Myer & Co., who were insolvent at the time, and whose fraudulent purpose in its execution was known to and participated in by their co-defendant. Touching the disposition of the stock and management of the business of said S. A. Myer & Co., subsequent to the transfer to Frenkle, the bill contained the following allegations:

"Par. 7. Complainants further show that there has been no change in the place of business of said S. A. Myer & Co., but that the same house used by them is now used by said Louis Frenkle & Co., and the goods pretended to be sold have remained in said house, and the said store has been kept open, and the business continued to all appearance as it was carried on by said S. A. Myer & Co. before the pretended sale aforesaid, and the same sign-board, with the same sign of S. A. Myer & Co., has continued unchanged, and the said Solomon Myer, the husband of said Sarah A. Myer, has continued in said house as salesman, and with the same apparent powers, rights and duties exercised by him before said pretended sale without any change whatever in the mode, manner, custody, or the persons who managed and conducted the business of said S. A. Myer & Co. That said Solomon Myer falsely pretended, and has falsely pretended since said simulated sale, that he is now, and has been, the mere clerk of said Louis Frenkle & Co., and that he is working for him on wages as a mere clerk or salesman." The bill contained other allegations, not necessary to be noted, of facts and circumstances indicating the asserted fraudulent character of the conveyance, and prayed that the same be vacated and annulled; and that said Louis Frenkle be charged with the value of the property which came to his hands by virtue of said conveyance; and that the same, and the proceeds thereof, be subjected to the payment of the demands of complainants.

Answers were filed by all the defendants specifically denying the imputed fraud and asserting the *bona fides* of the transfer to Frenkle. Both Solomon and Sarah A. Myer deny that they were partners, the former's connection with the business of S. A. Myer & Co. being stated as that of agent, merely, for his wife, who transacted business under the firm name of

S. A. Myer & Co. The said Solomon Myer averred that his employment as clerk by Frenkle, after the transfer, constituted no part of the consideration thereof, and that said employment was accepted by him in good faith, as a means of earning a livelihood; and that he derived no benefit from said business other than his compensation as such clerk. In his answer to the bill, the defendant, Frenkle, averred that the sale in question was unconditional and effected in good faith to secure the payment of an indebtedness due him from said S. A. Myer & Co. of $5,740.72 for cash advances actually made said firm between designated dates; that the difference between this sum and $6,200 (the consideration recited in the bill of sale) " was paid to S. A. Myer & Co. at the time of said sale or shortly after." However, in his deposition, the said Frenkle states that he " bought the stock for $5,200 and placed it to the credit of " Meyer, and " I bought the notes, books and accounts for $1,000, for which I gave my firm's note at ninety days. This note was paid at maturity, but I do not know who held the note when it was paid."

The evidence adduced was voluminous, and it is not necessary to an understanding of the opinion that it should be here summarized. Upon final hearing, upon pleadings and proof, the chancellor was of opinion that complainants were not entitled to the relief sought, and caused a decree to be entered dismissing the bill. This decree is here assigned as error.

VanHoose & Powell, for appellants.

Wood & Wood, contra.

STONE, C. J.—The sale of S. A. Myer & Co. to Frenkle was certainly gotten up and consummated in very great haste, and without those preliminary formalities which usually attend so grave transactions. To purchase, at a large gross sum, a stock of merchandise, entire, then being sold at retail, and with it all the unpaid dues, including notes and accounts, of the amount or availability of which the purchaser could have no personal knowledge; and this in a few brief hours, and solely on the representation of the seller as to quantity and value, certainly betrays a blind confidence, or recklessness, rarely met with in commercial circles. Add to this the pretended ignorance of Frenkle, the purchaser, that Myer, the seller, was insolvent, or in failing circumstances. Viewed in the most charitable light, there are many suspicious circumstances attending this transaction.—*Delaware v. Ensign*, 21 Barb. 85; *Griswold v. Sheldon*, 4 Comst. 580. Still, although Myer & Co. may have been insolvent, and that fact fully known to Frenkle, if

# 140

the latter was a *bona fide* creditor of the former, the law authorized him to use extraordinary haste in collecting his demand, even to the extent of purchasing everything Myer owned; thus leaving nothing for the other creditors. The limitations on this right are, that in purchasing as a means of collecting his own demand, he shall pay a reasonable, fair price for the goods or property received in payment, and that he shall, by the contract, secure to the vendor no benefit, which the law would not secure to him in the absence of the contract. He must not go beyond the permissible purpose of securing his own demand.—*Crawford v. Kirksey*, 55 Ala. 282; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192; *Lipscomb v. McClelland*, 72 Ala. 151; *Meyer v. Bromberg*, 74 Ala. 524; *Hodges v. Coleman*, 76 Ala. 103; *Levy v. Williams*, 79 Ala. 171.

The so-called firm of S. A. Myer & Co. consisted alone of Mrs. S. A. Myer. The testimony of Frenkle (and it is not contradicted) shows that Mrs. Myer—S. A. Myer & Co.—was indebted to him, Frenkle, balance of account, in the sum of fifty-seven hundred dollars. The merchandise and bills receivable were estimated and purchased by Frenkle at the sum of six thousand two hundred dollars. Of this sum five thousand and two hundred dollars were credited on the indebtedness to Frenkle. The remaining sum—nine hundred or one thousand dollars—was paid by Frenkle to Myer, either in cash, or in notes afterwards paid. The bill of sale shows the sale of merchandise and bills receivable was one entire and single transaction, for a gross sum. There is nothing in the pleadings or testimony which shows, or tends to show, that Myer, or Mrs. Myer, had any right or claim to any part of the property sold, which exempted it from liability for their debts. The facts and circumstances in evidence force us to the conclusion that Frenkle, when he made the purchase, knew S. A. Myer & Co. were unable to meet their liabilities, and, in fact, were insolvent. Now, if Myer, when the trade was being negotiated, demanded the payment of nine hundred or one thousand dollars as a condition of making the sale, this was an additional notice to Frenkle, which should have put him to careful inquiry. And if this money payment was not required by Myer as a condition of the sale, why did Frenkle pay him so much money, and leave a balance of over five hundred dollars of his own claim unsatisfied? He went beyond the permissible purpose of securing payment of his own demand, and enabled Myer to defraud his other creditors. The case falls within the principle settled in *Levy v. Williams, supra.*

The decree of the chancellor is reversed, and a decree here rendered, granting to complainants relief.

[Leinkauff & Strauss v. Frenkle & Co.]

It is therefore ordered and decreed that the bill of sale and conveyance made by Solomon Myer and Sarah A. Myer to Louis Frenkle & Co.—bearing date January 10th, 1881,—Exhibit A. to the bill,—be set aside as fraudulent, and held for nought. And a reference to the register is ordered, requiring him to state an account, showing the several amounts due the several complainants, with interest to the coming in of the report. Also, the value of the merchandise and bills receivable, transferred by Solomon and Sarah A. Myer to Louis Frenkle & Co., with like interest.

In taking the account, he will consult the admissions in the pleadings, the testimony on file, and any other legal testimony that may be offered. He will report his findings to the Chancery Court. All other questions are reserved for the chancellor's ruling.

Reversed and remanded.

[NOTE BY REPORTER.—In response to an application for a re-hearing, filed by counsel for appellee, the following opinion was delivered:]

STONE, C. J.—It is urged before us, as a ground for re-hearing, that Mrs. S. A. Myer was the sole member of S. A. Myer & Co.; that she has been all the while a married woman, and, being such, she was incapable of making a binding contract for the payment of money.—*Dreyfus v. Wolffe*, 65 Ala. 496; *Cook v. Meyer*, 73 Ala. 580. From this premise, it is contended, that the complainants in this suit, showing themselves to be creditors of S. A. Myer & Co., can only claim to be creditors of Mrs. Myer, and she not being bound by any promise she may make, complainants have failed to show themselves creditors by any lawful demand which can give them a standing in court.

The bill is filed against S. A. Myer & Co., composed of Solomon Myer and Sarah A. Myer, his wife. It proceeds against them as partners, and seeks to condemn only the merchandise and effects, which had been of the firm effects of S. A. Myer & Co., and which it avers had been fraudulently disposed of. Sworn answers to the bill were waived, and the answers were put in without oath. The answers deny that Solomon Myer was a member of the firm, and set up that S. A. Myer, the wife, was trading alone, employing the name S. A. Myer & Co. The bill of sale, or conveyance, by which the merchandise and effects were conveyed to Louis Frenkle, is made an exhibit to the bill, and is a part of the record. That conveyance is in the following language: "This agreement of purchase and sale, made this 10th day of January, 1881, by and between Sarah A. Myer and Solomon Myer, of the firm of

[Bates et al. v. Kelly.]

Sarah A. Myer & Co. of the county of Tuscaloosa in said State, and Louis Frenkle, composing [the firm] of Louis Frenkle & Co. of the city of Mobile, witnesseth," &c.  This is the only evidence found in the record bearing on the question of the constituent membership of the mercantile house of S. A. Myer & Co.  Neither Solomon Myer nor S. A. Myer was examined as a witness in this cause.  This evidence, unrebutted and unexplained, is sufficient *prima facie* proof that Solomon Myer, and S. A. Myer, his wife, were partners, doing business in the name of S. A. Myer & Co.

In a proceeding against a firm or partnership, to subject partnership effects to the payment of a partnership liability, it is no defense that one of the partners was a married woman at the time the liability was incurred.  The firm, and the firm effects are liable, notwithstanding some of the partners were not *sui juris*.— *Yarbrough* v. *Bush*, 69 Ala. 170.

The application for a rehearing must be overruled, and the decree heretofore rendered adhered to.