# Stix & Co. v. Keith.

*Trespass against Attaching Creditor, by Purchaser from Defendant in Attachment.*

1. *Fraudulent sale of goods; rights of creditors as against purchaser.* To enable the attaching creditors of an insolvent debtor, who sold and disposed of his entire stock of goods for cash, to defeat an action of trespass by the purchaser, they must show that the purchase was fraudulent—that the debtor attempted by the transaction to delay, hinder, or defraud his creditors, and that the purchaser had knowledge of such intention, or had information of suspicious circumstances which ought to have put him on inquiry, and, if followed up, would have led to knowledge of such intent.

2. *Objections to venire.*—The action of the jury commissioners in drawing the names of jurors from which a struck jury is to be selected, using a list prepared two years before instead of making out a new one, is not good ground for quashing the *venire.* ·

3. *Commercial standing of debtor; competency of witness as to.*—As tending to prove notice to the purchaser of the debtor's insolvency or failing circumstances, only general reputation, or recognized commercial standing, can be made the basis of evidental opinion; and it can not be assumed, as matter of law, that a salesman in his store, who had never examined the books, is competent to testify as to his commercial standing.

4. *Charge invading province of jury, as to presumption that witnesses speak the truth.*—A charge which instructs the jury that "the law presumes that witnesses, in their statements under oath, speak the truth," invades the province of the jury, is misleading and erroneous. (*Rowland v. Plummer*, 50 Ala. 182, overruled.)

5. *Measure of damages.*—In trespass against attaching creditors, by a purchaser from the defendant in attachment, the measure of the plaintiff's damages, if he is entitled to recover at all, is the value of the entire stock of goods levied on and sold, although only a part of the proceeds of sale was applied to the payment of their judgment, the residue being applied to the judgments of other attaching creditors.

[Stix & Co. v. Keith ]

6. *Constructive notice; facts calculated to arouse suspicion, or excite inquiry.*—Where the plaintiff, while negotiating for the purchase of a half interest in the goods and business of the defendant in attachment, not including bills payable or receivable, was offered the privilege of examining the books, but declined to do so, having confidence, as he testified, in the debtor personally; it can not be asserted, as matter of law, that these facts were sufficient to put him on inquiry, and thus charge him with constructive notice of the debtor's insolvent or embarrassed condition, though they are circumstances on which counsel might comment, and which the jury might consider in connection with the other evidence.

APPEAL from the Circuit Court of Jackson.

Tried before Hon. JOHN P. TALLY.

This action was brought by P. W. Keith, against the appellants, a mercantile partnership, to recover damages for the alleged illegal seizure of a stock of goods, which the plaintiff had purchased from one C. M. Fennell, and on which an attachment was levied, at the suit of the defendants, as the property of said Fennell.

Before entering on the trial, the defendants demanded a struck jury; and a list of twenty-four persons having been drawn and furnished, they moved the court to quash and set aside the said special *venire*, "because the same was not drawn according to law, in this: The jury commissioners of said county did not hold their first meeting on the next day after the adjournment of the Commissioners Court, after the first Monday in April, 1887, according to the requirements of the second section of the act of the General Assembly approved February 28th, 1887; that said commissioners did not hold said meeting at the time required by said statute, nor any time since the passage of said statute, and select from the male residents of said county, over twenty-one and under sixty years of age, who are householders or freeholders, the names of all such persons, not exempt from jury duty, as in their opinion were fit and competent to discharge the duties of petit jurors, with honesty, impartiality, and intelligence; but, on the contrary, said persons were drawn under an act of the General Assembly approved February 17th, 1885, which was repealed by said act approved February 28th, 1887; and said action of said jury commissioners in drawing said persons as jurors, a list of which has been furnished to these defendants, is utterly void, because said jurors were not drawn from the names of all persons not exempt from jury duty, and competent to serve as jurors, as provided in section three of said act approved February 28th, 1887; and because said commissioners did not hold their meeting as

provided by the second section of said act." On the hearing of this motion, "it was admitted that the facts were true and correct as therein stated." The court overruled the motion, and the defendants excepted.

On the trial, the defendants assailed the validity of the purchase of the goods by the plaintiff, on the ground that the sale was made by said Fennell with the intent to hinder, delay and defraud his creditors, he being then insolvent, or in failing circumstances, and that the plaintiff had knowledge of such fraudulent intent, or was chargeable with constructive notice thereof; and they reserved numerous exceptions to the rulings of the court on the admissibility of evidence, and in the matter of charges given and refused, bearing on this question. The opinion states the material facts.

The defendants requested the following (with other) charges, and duly excepted to their refusal: "(13.) When circumstances exist, raising a doubt of the fairness of the transaction, the vendee must prove an adequate consideration, when the fairness is attacked by creditors; and if the jury believe from the evidence that Keith paid $4,600 for the stock of goods worth $6,000, that would be a circumstance to which they would be authorized to look in determining the fairness of the transaction between Keith and Fennell." "(18.) If the jury believe from the evidence that, prior to, and at the time of the alleged sale and purchase of the goods, Keith and Fennell were partners in the mercantile business, that is a circumstance to which they may look in determining the question as to whether Keith knew of Fennell's insolvency, or by reasonable diligence had opportunity to know it; and if they believe from the evidence that Keith knew of Fennell's insolvency, or had opportunity, by the exercise of due diligence, to know it at the time he purchased the stock of goods, they would be authorized to find a verdict for the defendant."

The assignments of error, 32 in number, embrace all the rulings to which exceptions were reserved.

HUMES, WALKER, SHEFFEY & GORDON, and R. C. HUNT, for the appellants.

R. C. BRICKELL, and BROWN & KIRK, contra.

STONE, C. J.—On the 19th day of December, 1884, Keith purchased from Fennell a half interest in a stock of

merchandise, and became his equal partner in the business. Twenty days later—January 9, 1885—he purchased the other half interest, and continued the business in his individual name. He did not purchase any interest in Fennell's bills receivable, nor is there testimony in the record tending to prove their amount or value. It is neither proved nor claimed that Keith assumed Fennell's debts in either of these purchases. The uncontroverted testimony is, that Keith, for the undivided half interest, promised and paid twenty-two hundred dollars, and for the remaining half interest twenty-four hundred and seventy dollars; all done and completed within a few days after the respective purchases. The invoice value of the goods was between five and six thousand dollars, and witnesses cover the same margin in fixing their value.

On the 19th day of January, 1885, the appellants, Louis Stix & Co., sued out an attachment against Fennell, on the alleged ground that he had fraudulently disposed of his property and effects, claiming that he owed them something over eight hundred dollars. Under said attachment, the goods were levied on, and the store taken possession of the same day, by the United States marshal. While the goods and store were so in the hands of the United States marshal, other attachments, at the suit of other creditors of Fennell, were placed in his hands, and were also levied on the goods. The aggregate of the attachments thus levied equalled or exceeded the value of the merchandise. No part of the merchandise, or its proceeds, was ever restored to Keith. The attachment suits were prosecuted to judgments, and the goods were sold in satisfaction of them. The sale of the goods yielded thirty-five hundred dollars, eight hundred and eighty dollars or more of which were applied to the satisfaction of the judgment in favor of Stix & Co. The balance went to the later attaching creditors of Fennell.

The present action of trespass *de bonis asportatis* was instituted by Keith, and counts in damages for taking and carrying away the entire stock of goods. The defendants attempted to justify under process, not against Keith, but against Fennell. Of course, to make such defense good, it was necessary to show that Keith's purchase was fraudulent; or, what is the same thing, that Fennell, by the transaction, attempted to delay, hinder or defraud his creditors, and that when Keith purchased, he knew such was his intention, or had information of suspicious circumstances, which ought

to have led him to make inquiry; and that if he made such inquiry, and followed it up, it would have led to knowledge of Fennell's fraudulent intent. The legal principles applicable to this question have been so often stated, that we deem it unnecessary to repeat them.—*Crawford v. Kirksey,* 55 Ala. 282; *Hodges v. Coleman,* 76 Ala. 103; *Lehman v. Kelly,* 68 Ala. 192; *Levy v. Williams,* 79 Ala. 171; *Shealy v. Edwards,* 75 Ala. 411; *Leinkauff v. Frenkle,* 80 Ala. 136; *Hoyt v. Turner,* 84 Ala. 523; 3 Brick. Dig. 678, § 10; Wait's Fraud. Con., § 376.

The circumstances of the transaction brought to view in this case go very far to show that Fennell, in selling his merchandise, had the intent to defraud his creditors. So, the most important inquiry was, whether Keith, when he purchased, had notice or knowledge that such was his intention, or was cognizant of such suspicious circumstances as were calculated to put him on inquiry, which, if entered upon and followed up, would have led to a discovery of this fraudulent intent. If these constituent elements are shown to have co-existed, then, notwithstanding Keith may have promised and paid the full value of the merchandise, his title is worthless against the claims of Fennell's creditors. No man should aid another in a dishonest effort to defraud his creditors; and any intentional assistance thus rendered is a legal wrong, which it would be a reproach to the law to say it could not redress.

But it is not every assistance rendered a failing debtor in defrauding his creditors, that the law condemns, or punishes. We live in a commercial age, and the right to sell is one of the attributes of property. It is only when this inherent right is perverted to unlawful or dishonest uses and purposes, that it deserves condemnation; and only when it is knowingly assisted, or assisted under circumstances which render ignorance of the evil intent wicked or culpable, that the law lays its chastising hand on the accomplice, or helper. To do more than this, would greatly embarrass that free commerce, which our institutions and the age we live in have done so much to encourage and promote.

Such questions as we deem it necessary to notice we will now consider in detail.

We do not consider there is anything in the motion made to quash the panel from which the struck jury was to be selected.—*Harrington v. State,* 83 Ala. 9.

J. P. Stewart, a witness for plaintiff, was asked, "What

was Fennell's commercial standing during the time he [witness] was with him?" This question was objected to on several grounds, and among them, "because no proper predicate was laid for asking the witness such question." The objection was overruled, and the witness answered, "It was good." The ruling on question and answer was, as to each, excepted to. This witness was a salesman in the store when each of the sales was made. There was no proof offered, save the fact that the witness was such salesman, tending to show he had knowledge of Fennell's commercial standing, and he was not interrogated as to such knowledge.

We do not think a sufficient predicate was laid for letting in the testimony. It could not, from the facts shown, be assumed as matter of law that the witness was sufficiently acquainted with Fennell's business standing to express his judgment or opinion upon it. He stated that he had never examined the books. The court erred in admitting this testimony.—*Pollock v. Gantt*, 69 Ala. 373; *Wood v. Brewer*, 57 Ala. 515; *Baucum v. George*, 65 Ala. 259.

This testimony was material on the single, yet very important inquiry, whether Keith, when he purchased from Fennell, had, or was chargeable with having, notice that the latter was in failing circumstances, or contemplated defrauding his creditors. As testimony tending to prove notice, it is only general reputation, or recognized commercial standing, which can be made the basis of evidential opinion. To give such opinion, the witness must have knowledge of the commercial standing of the person about whom he testifies.

The credibility of parol testimony is a pure question of fact, for the trying body to determine. The intelligence of the witness, his manner in testifying, the consistency, probability or improbability of his narrative, all enter into, and make up the probative force of his testimony. And, when known, the character of the witness becomes a factor in producing, or failing to produce conviction. Few, if any, have had so little contact with the world, as not to be able to recall instances in which a simple narration carried with it unquestioning conviction, while, in other instances, such narrations utterly failed to convince the mind of their truth. Yet it would be difficult, if not impossible, to define why one statement produced conviction, and the other failed. So with parol testimony. So many influences, agencies, and considerations enter into the inquiry, that the law can assert no rule in regard to its credibility. It declares rules

for aiding juries in weighing, but never weighs parol tes-
timony. In 1 Greenl. Ev. § 10, note *a*, it is said: "The
question of the degree of credibility of an individual wit-
ness, or of all the testimony in the case, is wholly for them
(the jury) to decide. Any instruction from the judge, by
which such a question is put to the jury as a matter of law,
is an infringement by the court of the peculiar province of
the jury."—1 Whart. Civ. Ev. (2d Ed.), § 417. The Circuit
Court erred in charging the jury, that "the law presumes
that the witnesses in their statements under oath speak the
truth." The law raises no presumption, either one way or
the other.

We are aware that in *Rowland v. Plummer*, 50 Ala. 182-
195, the doctrine was stated as it was charged by the trial
judge in this case. We suppose he was influenced by that
decision in the ruling he made. Five decisions of this court
are cited in connection with the ruling of *Rowland v. Plum-
mer*, but they do not bear on the question we are consider-
ing. We think the principle asserted unsound, unsupported
by authority, and misleading. The case of *Rowland v.
Plummer* is overruled.

The question second in importance in this case is the
measure of damages. Defendants in the court below, ap-
pellants here, contend, that even if there be a recovery
against them, the measure should be not the value of the
whole stock of goods, but only of the proportion which was
sold and applied to the payment of their judgment. They
rest this asserted right on the fact, that after the marshal
acquired possession of the merchandise under their attach-
ment, other creditors of Fennell had attachments placed on
the stock of goods, and it was thus rendered impossible, by
no fault of theirs, for them to restore to Keith the surplus
of the goods, or their proceeds.

There is a principle, well recognized and eminently just,
that if, after goods or chattels are tortiously taken, they are
restored, in whole or in part, to the rightful owner, or are
applied, under legal proceedings, to the payment of his
debts, such fact or facts may be invoked in mitigation of
damages.—6 Wait's Ac. & Def. 114, and authorities cited;
*Kelly v. Shed*, 10 Met. 317. That principle has no appli-
cation to this case. The present action, if maintainable at
all, must be supported on the ground that the goods were
not Fennell's, but Keith's. If Keith's goods were improp-
erly seized, to pay a debt which Fennell owed, it can be no

defense for the wrongful captor, that part of the goods so taken were subsequently applied wrongfully to the payment of Fennell's other debts. If A be sued for taking the goods of B, it is no defense for A, that C subsequently took and carried them away from him. The marshal's right to enter and take the goods, depended on their ownership. If the sale to Keith was fraudulent, no wrong was done to Keith, and he can not maintain this action. If the sale was valid, then the seizure was a naked trespass.—*Pollak v. Searcy*, 84 Ala. 259; Murfree Sher. § 976; 2 Sedg. Dam. 444; *Hopple v. Higbee*, 23 N. J. Law, 342; *Fairchild v. Case*, 24 Wend. 381. Stix & Co., if liable at all, are liable for the whole damages. If they have any recourse, it is against the other attaching creditors, who shared in the proceeds. *Curtis v. Ward*, 20 Conn. 204.

Keith, when examined as a witness, testified that, while negotiating with Fennell for the purchase of the first half interest in the merchandise, the latter, Fennell, informed him that he owed but little, which he could pay at any time, and that he offered to let him examine his books, which he said showed the amounts he owed, and the amounts due him. Keith did not examine the books, and testified that he felt no interest in their contents; that he knew Fennell, and had confidence in him, and did not think or care any thing about the question of Fennell's debts; did not, when testifying, know whether the books showed what Fennell owed; and there was no testimony as to what the books did show. They were not put in evidence. It will be remembered, that Keith in his purchases acquired no interest in Fennell's bills receivable, and did not assume his debts. Many charges were asked and refused, asserting that what took place, stated last above, was sufficient to put Keith on inquiry; and if he had examined the books, he would have ascertained Fennell's insolvent or embarrassed condition, and, as a consequence, would have learned that Fennell's intention in selling was to delay, hinder and defraud his creditors. On this principle, defendants claimed the verdict should be for them.

Forming a partnership with Fennell in an existing business, as Keith by his first purchase did, it may present a subject of comment and criticism, that the latter should have felt no interest in its extent and profitableness. Against this may be weighed Fennell's commercial standing, if known and good, and Keith's confidence in him, if it existed.

There may also be other attendant facts and circumstances, *pro* and *con*, which can be urged before a jury, but on which it is neither our province nor wish to dwell. . These are all pure questions of fact for the jury to consider and weigh, without any intimation from us of their weight or significance. This conduct of Fennell, if correctly testified to by Keith, was not calculated to awaken suspicion, and we can not affirm that, as matter of law, they cast on Keith the duty of examining the books; and hence they do not necessarily raise against him the legal implication that he had notice of the facts, the discovery of which such examination would have led to.—Wade on Notice, § 23. Nor is it shown that an examination of the books would have disclosed the amount of Fennell's indebtedness. All charges raising this question were rightly refused. We do not say, however, that Keith's failure to examine the books was not a circumstance counsel could comment on, and the jury should weigh in connection with the other evidence.

Many of the charges given or refused, and excepted to, were correctly ruled under the doctrine declared above. Others are, in some of their features, abstract and misleading, and some of them draw too broad a conclusion from their premises. Charge 18 asked by defendants is of the latter class. That charge, if its premises were found by the jury, might vitiate the title to the moiety of the merchandise last purchased. It could not, in the nature of things, be made to apply to the first purchase. The fact that Fennell and Keith were partners from the 19th of December to the 9th of January, is a circumstance for the jury to consider in determining whether the latter had learned Fennell's insolvent or failing condition before he made the second purchase. If he had, and purchasing as he did for money, the law would not uphold such purchase.—*Lehman v. Kelly*, 68 Ala. 192; *Leinkauff v. Frenkle*, 80 Ala. 136; *Levy v. Williams*, 79 Ala. 171; *Strong v. Hinds*, 35 Miss. 201.

Charge 13 asked by defendants ought to have been given.

There was no other charge refused that is not obnoxious to some one or more of the objections noted above.

Reversed and remanded.