[Smith et al. v. Kaufman.]

# Smith *et al. v.* Kaufman.

*Action for Trespass against Sheriff and Sureties on his Official Bond.*

1. *Struck jury.*—When a struck jury is demanded, each party has the right to a full panel of twenty-four competent jurors before the process of striking is entered upon.

2. *Same.*—Where, in selecting a struck jury, after two jurors have been struck from the list by each party, the judge interrogates the remaining twenty, and discharges two for incompetency, a sufficient number of jurors should be summoned to complete the panel, and not two only, to take the place of those discharged.

3. *Error in selecting struck jury not without injury when general charge is given.*—Error against defendant in selecting a struck jury is not rendered harmless by a charge that if the jury believe the evidence they shall find for plaintiff, as they still have to pass on the credibility of the testimony and the amount of plaintiff's damages.

4. *Complaint averring trespass by sheriff in seizing goods.*—Though a complaint against a sheriff for trespass in seizing plaintiff's goods charges a trespass on land, yet where it also charges that defendant took therefrom the goods of plaintiff, copying substantially the form for trespass in taking goods, it is not necessary for plaintiff to prove trespass on land.

5. *Facts admitted in pleadings need not be proved.*—In an action against a sheriff for trespass it is not necessary to prove that defendant was sheriff, where his plea of justification states that he was, since it is never necessary to prove what is admitted in the pleadings.

6. *Notice by purchaser of seller's insolvency.*—Where there is testimony that at the time plaintiff purchased goods from an insolvent debtor he examined bills for the goods, which showed that the debts incurred in their purchase were not due, it should be left for the jury to say whether he had notice of facts creating suspicion of the seller's insolvency and intent to defraud, which, if followed up, would have led to knowledge thereof.

7. *Charge as to notice by purchaser of seller's insolvency.*—Upon a trial involving an issue of fraud in the sale of goods by an insolvent, it is error for the court to refuse to charge, at the written request of the defendant, "That if the jury believe from the evidence that if B. was insolvent at the time he sold his goods to the plaintiff, and that the plaintiff paid cash for said goods, and that plaintiff had knowledge of such insolvency or had such notice as to put a reasonable person on inquiry as to such insolvency, and that such inquiry, if followed up on the part of plaintiff, would have disclosed such insolvency, then I charge you that you must find for the defendants, so far as the goods levied on which plaintiff had purchased from B. are concerned."

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

Action by S. Kaufman against Joseph S. Smith and others, the sheriff, and the sureties on his official bond, for trespass

VOL. C.

[Smith et al. v. Kaufman.]

in seizing property belonging to plaintiff. The facts are sufficiently stated in the opinion of the court. The defendant requested the court to give the charge referred to in the opinion as charge 9, which is set out in full in the 6th headnote, and to the refusal of the court to give said charge the defendant duly excepted.

GARRETT & UNDERWOOD, and HEWITT, WALKER & PORTER, for the appellants.

LEA & BELL, for the appellee.

STONE, C. J.—This is the second appeal in this case. —*Smith v. Kaufman*, 94 Ala. 364.

Smith, the defendant in the court below, demanded a struck jury under our statute, Code of 1886 § 2752. Lists of jurors containing 24 names had been furnished to counsel on each side, and the process of striking had been entered upon. Each party had struck two jurors from the list, leaving twenty names not passed on. At this stage of the selection, the presiding judge propounded to the remaining twenty jurors certain inquiries with a view of ascertaining their qualifications and fitness for the particular service they were about to enter upon. The result of this inquiry was the rejection for incompetency of two of the remaining twenty. The court thereupon ordered the sheriff to summon two other jurors, to take the places of those excluded by order of the court; and this being done, counsel were directed by the court to proceed with the selection of the jury from the remaining twenty. This was objected to by defendant's counsel, they claiming that the selection should be begun anew from a full panel of twenty-four names. The objection was overruled by the court, and defendant excepted. The striking of jurors from the list, until the number was reduced to twelve, was then carried into effect.

When a struck jury is demanded, each party has the right to a full panel of twenty-four competent jurors before the process of striking is entered upon. This, for the obvious reason that until all the names are before him, he can not, in all cases, determine satisfactorily which of the twenty-four are least acceptable to him. The law, when a struck jury is claimed, secures to each party the right to six peremptory challenges, and he cannot have the full enjoyment of this right, if the names are presented in piece meal.—*Dothard v. Denson*, 72 Ala. 541; *M. & E. Rwy. Co. v. Thompson*, 77

[Smith et al. v. Kaufman.]

Ala. 448; *Adams v. Thornton*, 82 Ala. 260; *McArthur v. Carrie*, 32 Ala. 75.

It is contended for the appellee that the error we have been commenting on should not work a reversal, because, if an error, it was without injury to appellant. The particular ground of this contention is, that the court, at the instance of plaintiff gave the general charge, that if the jury believed the evidence, they must find a verdict for plaintiff. The answer to this is, that the jury had to pass on two inquiries of fact—the credibility of the testimony and the amount of damage plaintiff had suffered. The appellant was as much entitled to a legally organized jury to pass on these questions of fact, as he would have been if the whole controversy had been submitted to their determination. The court erred in the ruling we have been commenting on.

The record recites that it contains all the evidence. The appellant contends that there was no testimony that he, Joseph S. Smith, was sheriff, or that he ever entered upon the premises, in and upon which the complaint charges the trespass was committed. And inasmuch as the complaint charges a trespass on land, and is framed in conformity with form 26 of "pleadings in civil actions," the contention is that the plaintiff failed to prove the cause of action alleged, and consequently that the court erred in giving the general charge in his favor. It should be stated, however, that notwithstanding the complaint, in its first clause, pursues form 26, it also charges that the defendant took therefrom the goods sued for. In this part of its averments it copies substantially all of substance that is found in form 23 —"trespass in taking goods."

We consider it unnecessary to comment on what is said pro and con on this branch of the case. One plea interposed by defendants avers "that the said Joseph S. Smith * * levied on said property as the property of Jacob Bandman under an attachment from the city court of Birmingham, authorizing him to make said levy; the said Joseph S. Smith being at the time of said levy the sheriff of Jefferson county." It is never necessary to offer proof of what is admitted in the pleadings. The seizure of the goods was the sole subject for which a recovery was claimed; the sole alleged trespass of which proof was made. There is nothing in this objection.

As was said when this case was formerly before us, it does not appear to have been controverted in the court below that in the sale made by Bandman to Kaufman, made as it was for cash, the intention of the seller was to defraud

his creditors. The only really controverted question was, whether Kaufman had knowledge that such was his intention, or "had knowledge of suggestive facts which, if followed up, would have led to a discovery of the fraud."

Kaufman testified that he paid the full value for the goods, and there is no testimony that the price he testified he paid was less than their value. He further testified that he did not know Bandman was insolvent, and had no knowledge that his intention in making the sale was to defraud his creditors. Bandman confirmed him in this. In this state of the issue and of the testimony, the inquiry of sufficiency *vel non* of the consideration and its payment depended entirely on the credit accorded to the witnesses Kaufman and Bandman, with nothing positive to contradict or weaken its force. Had Kaufman knowledge of Bandman's fraudulent intent? There is no direct proof of such knowledge. Had he information of circumstances which were suspicious in their nature, and suggestive of an intention not to apply his assets to the payment of his debts; and were those circumstances sufficient to justify their submission to the jury, on the inquiry of constructive notice, either that Bandman was insolvent, or that his intention was to withhold his assets from his creditors? This is the question of merit in this suit, for on its solution depends the propriety or impropriety of the general charge given in favor of plaintiff.

In *Stix v. Keith*, 85 Ala. 465 a merchant being indebted at the time, sold his entire stock of goods for cash, pocketed the money, went out of business leaving his debts unpaid, and became insolvent. An attempt was made by creditors to subject the goods in the purchaser's hands to the payment of their claims, and the question was whether Keith, was chargeable with constructive notice of Fennel's fraudulent intent. He denied knowledge that Fennel was indebted or intended to defraud his creditors. In that case Keith had first purchased a half interest in the merchandise, thus becoming a co-partner with Fennell. Twenty days later he purchased the remaining half interest. He purchased only the goods, and did not purchase the bills receivable. He purchased for money which he paid. Keith testified that Fennell informed him that he owed but little, which he could pay at any time. He also testified that Fennell offered to show him, Keith, his books, but he said he felt no interest in them and did not examine them. That suit, like the present one, was an action of trespass by the purchaser for the wrongful taking of the goods. The fol-

[Smith et al. v. Kaufman.]

fowing charge, among many others, was asked by defendant, refused by the court, and an exception reserved : "18. If the jury believe from the evidence that, prior to and at the time of the alleged sale and purchase of goods, Keith and Fennell were partners in the mercantile business, that is a circumstance to which they may look in determining the question as to whether Keith knew of Fennell's insolvency, or by reasonable diligence had opportunity to know it; and if they believed from the evidence that Keith knew of Fennell's insolvency, or had opportunity by the exercise of due diligence to know it at the time he purchased the stock of goods, they would be authorized to find a verdict for the defendant."

Commenting on the rulings of the court, after referring to some of the charges in some of their features as abstract and misleading, and to others as drawing too broad a conclusion from their premises, we said : "Charge 18 asked by defendants is of the latter class. That charge, if its premises were found by the jury, might vitiate the title to the moiety of the merchandise last purchased. It could not, in the nature of things, be made to apply to the first purchase. The fact that Fennell and Keith were partners from the 19th of December to the 9th of January is a circumstance for the jury to consider in determining whether the latter had learned Fennell's insolvent or failing condition before he made the second purchase. If he had, and purchasing as he did for money, the law would not uphold such purchase."

We had previously said : "Forming a partnership with Fennell in an existing business, as Keith by his first purchase did, it may present a subject of comment and criticism, that the latter should have felt no interest in its extent and profitableness. Against this may be weighed Fennell's commercial standing, if known and good, and Keith's confidence in him, if it existed. There may also be other attendant facts and circumstances, *pro* and *con*, which can be urged before a jury, but on which it is neither our province nor wish to dwell. . . . This conduct of Fennell, if correctly testified to by Keith, was not calculated to awaken suspicion, and we can not affirm that, as matter of law, they cast on Keith the duty of examining the books; and hence they do not necessarily raise against him the legal implication that he had notice of the facts, the discovery of which such examination would have led to. Nor is it shown that an examination of the books would have disclosed the amount of Fennell's indebtedness. . . . We do not say, how-

ever, that Keith's failure to examine the books was not a circumstance counsel could comment on, and the jury should weigh in connection with the other evidence."

In *Lehman, Durr & Co. v. Kelley*, 68 Ala. 192–201, commenting on the question we are now considering, we said a sale "is fraudulent and inoperative if intended by an insolvent seller to delay, hinder, or defraud his creditors, and if that intent be known to the purchaser, or if he be in possession of information reasonably calculated to stimulate inquiry, and which, if followed up, would lead to a discovery of the seller's fraudulent purpose. The underlying morals, on which this sound principle of law rests, are that it is the legal duty of every debtor to keep his property open to the claims of his creditors, and to make no effort to secrete it or to sell it, otherwise than for the honest purpose of paying his debts. If he secrete his property, or if he sell it with the intent or purpose of delaying, hindering or defrauding his creditors, . . . even if he sells for the full value; the purchaser, although paying full value, acquires no valid title against the vendor's creditors, if he aid him in consummating the fraud. He renders sufficient aid to invalidate his purchase when he knows the seller's fraudulent intention in making the sale, or has knowledge of facts and circumstances naturally and justly calculated to awaken suspicion in the mind of a man of ordinary care and prudence, of the fraudulent intent of the seller."

In the case of *Shelly v. Edwards*, 75 Ala. 411, the principle is thus stated: "The participation of the purchaser in the fraud may be shown by proof of such fact or facts as are sufficient to charge him with notice of the debtor's fraudulent intent; and for this purpose, knowledge on his part of facts which, however general in their nature, are sufficient to put him on inquiry, by reasonably exciting in his mind a just suspicion as to the honesty or *bona fides* of the transaction, is sufficient."

In *Bush v. Collins*, 11 Pac. Rep. 425, the court said: "As McMillan & Co. sold their stock of goods with the intent to defraud their creditors, if Frease, the agent of Collins, had knowledge of such intent, the transaction, not being *bona fide*, must be deemed fraudulent as against the creditors of McMillan & Co., so also if Frease, as the agent of Collins, did not have actual knowledge of the intent of McMillan & Co., yet if his situation was such that as a reasonably prudent man, he could and would have known of the fraudulent intent, the transaction must also be deemed fraudulent. A vendee can not blind his eyes to facts which surround him,

and protect himself by claiming that he had no actual knowledge of his vendor's faudulent intent. A knowledge of facts sufficient to put one on inquiry is equivalent to actual knowledge of the ultimate fact." The facts of the case just quoted from may be consulted with profit.

In *Wallis v. Adone*, 13 So. W. Rep. 63, the principle is thus announced: "A mortgage given by an insolvent debtor for $5500, $4500 of which represent past indebtedness, and §1000, money advanced on the execution of the mortgage, is fraudulent as to other creditors, where the mortgagee knew at the time that the other was insolvent."

In *Carter Bros. v. Coleman*, 84 Ala. 256, and in *Beachman v. Koch*, 92 Ala. 452, the transactions were upheld because the purchase-money paid was actually applied to the debts of the seller: This, it was held, repelled all imputation of fraud which could have attached to the transaction by reason that a failing debtor disposed of his effects for money.—*Loeb v. Flash*, 65 Ala. 526; *Hodges v. Coleman*, 76 Ala. 103; *Rankin v. Vandiver*, 78 Ala. 562; *Pritchett v. Pollock*, 82 Ala. 169; *Knowles v. Street*, 87 Ala. 357; *McDowell v. Steel*, *Ib*. 493; *Lehman v. Greenhut*, 88 Ala. 478; *Stephens v. Regenstein*, 89 Ala. 561.

When this case was formerly before us, 94 Ala. 364, we said: "The insolvency of Bandman, from whom plaintiff purchased the goods, was not controverted. One of the main inquiries in the case was as to Kaufman's knowledge either of his vendor's insolvency, or of facts which amounted to constructive notice of it. As pertinent to this inquiry it was shown that Kaufman, in making an inventory of the stock with a view of its purchase, used invoices of certain of the goods which had been made out by the persons from whom Bandman had bought them, and that these bills showed that the goods had been bought on credit. It was not made to appear what dates the bills bore, nor the time of credit in any instance, nor, indeed, that either of these facts was shown by them. For aught that does appear these bills may have antedated the longest term of credit known in the particular line of business. Moreover, there is no evidence that the bills indicated that the amounts they represented had not been paid. All, in fact, which it can be affirmed that they tended to show, was that Bandman sometime in the past had bought some of the goods found in the stock on time. We are far from believing that this fact was sufficient to raise up in the mind of Kaufman suspicion of Bandman's solvency, sufficient to put upon him the *onus* of inquiry on that subject, and to charge him with a knowledge

of all the facts which such inquiry, diligently prosecuted, would have disclosed. On the contrary, we apprehend that the naked fact of Bandman's having been able to purchase goods on a credit—and that is all we have here—would rather tend to prevent and allay suspicion of his solvency than otherwise."

The testimony in this case is different from that shown on the former appeal. Bandman was examined as a witness, and testified "that he was insolvent at the time he made the sale to Kaufman, and that among his other creditors were Moore, Bremaker & Co.; that he used the money received from Kaufman to pay his confidential creditors, among whom were Mr. Fies and Mr. Hochstader, but that he did not then, and has not since paid any of his general creditors to whom he was indebted for the stock of goods he sold to Kaufman. . . That he and Kaufman made an inventory of the stock before the sale was consummated, and that in making the inventory they both referred to the bill book kept by Bandman to ascertain the cost price of the goods, when the mark on the goods did not show it; that this book had pasted in it all the itemized bills of the goods purchased by Bandman while engaged in business, and that these bills showed from whom the goods had been purchased, described the goods, gave the price by items, showed on what time the goods were sold and when the bills became due, and when the goods were sold. The witness further stated that at the time of said sale he was indebted to his creditors for some of the goods he had in his store, but none of said bills were past due on the day the sale was made, but most of them became due afterwards; that the bills for said goods were pasted in the bill book examined by Kaufman when he made the inventory." Unlike the testimony on the former trial, that part which we have copied states that the bills showing the purchase of the goods were shown to, and inspected by Kaufman pending the purchase, and those bills showed that the debt or debts incurred in the purchase had not become due. There is no presumption that debts are paid or discharged before their maturity.

We hold that the testimony in this case was such, that its sufficiency ought to have been submitted to the jury, on the inquiry whether Kaufman, when he made the purchase had notice of a suggestive fact or facts, creating suspicion of the insolvency or fraudulent intent of Bandman, which, if followed up, would have led to knowledge that he was insolvent, or intended to defraud his creditors.

[Richardson Bros. & Co. v. Stringfellow.]

The Circuit Court erred in giving the general charge at the request of plaintiff, and in refusing to give charge 9 asked by defendant.

Reversed and remanded.